WOLF ET AL. v. THE DES MOINES & FT. DODGE R'Y CO.

1. **Contract for Liquidated Damages: CONSTRUCTION OF.** The question whether a sum named in a contract as liquidated damages for a failure to perform shall be treated as liquidated damages in fact, or only as in the nature of a penalty, is not concluded by the terms used by the parties, but is to be determined by the court from a consideration of the nature of the agreement and the surrounding circumstances. But where, from the nature of the contract, the extent of the damages which would result from a breach thereof is difficult or impossible of ascertainment, and the parties have deliberately named a sum as liquidated damages, the courts are more disposed to hold them to a literal interpretation of their own words; and it is so done in this case.

Wolf et al. v. The Des Moines & Ft. Dodge R'y Co.

2. **Contract to Build Railroad:** STIPULATED DAMAGES: WAIVER OF: FACTS NOT AMOUNTING TO. The evidence in this case considered, (see opinion,) and *held* not sufficient to establish a waiver of the right to retain the stipulated damages named in the contract for a failure to perform, as agreed, in building a railroad.

3. **Evidence:** STATEMENT OF AGENT TO BIND PRINCIPAL. What an agent says in regard to a matter not within the scope of his authority does not bind the principal, and evidence thereof is not admissible for that purpose.

*Appeal from Polk Circuit Court.*

FRIDAY; SEPTEMBER 19.

PLAINTIFFS brought this action in equity to recover an alleged balance due them for work and labor performed by them in constructing the embankment or earth work of twenty-six miles of railway for the defendant. The judgment of the circuit court was for defendant, and plaintiff appeals.

*Wright, Cummins & Wright*, for appellant.

*Nourse & Kauffman*, for appellee.

REED, J.—The petition sets out the contract between the parties, which is in writing, and alleges that in pursuance of the contract plaintiff performed work and labor to the amount of $30,103.45, and that there remains due therefor the sum of $4,500, for which amount, with interest, they ask judgment. They also ask for the establishment and enforcement of a mechanic's lien on the section of road on which said work was done.

The defendant's answer admits the making of the contract, and that plaintiffs performed work and labor thereunder to the amount charged in the petition.

And it is alleged therein that defendant has paid plaintiffs on account of said work the sum of $26,467.87. It is also alleged that plaintiffs, having failed to prosecute the work with an adequate force, as required by the contract, and

to complete the same within the time therein provided, it terminated the contract, as it had a right to do under the provisions of the contract, and that thereupon it became entitled to retain ten per cent of the amount coming to plaintiffs, under the contract, for liquidated damages. It is also alleged, by way of counter-claim, that plaintiffs failed and neglected to prosecute the work under said contract with an adequate force, and failed to complete the same within the time provided in the contract, for which reasons it took charge of and completed said work, as it had the right to do under the contract, by reason of which failure by plaintiffs it has been damaged in the sum of $50,000, the items of which amount are the loss of the use of its road bed, the additional cost of doing said work over and above what its cost would have been if plaintiffs had performed the work under the contract; and the loss of certain subsidies which had been voted by two townships in Pocahontas county in aid of the construction of said railroad, but which were voted on the condition that the same should be completed within a specified time, and which were forfeited by its failure to complete the road within said time; which loss was occasioned, as it alleges, by the failure of plaintiffs to complete the work covered by the contract within the time therein specified.

The plaintiffs, in their reply, admit that they did not complete the work within the time specified in the contract, but allege that their failure in this respect was occasioned by the fault and neglect of the defendant; that it neglected to furnish timber and materials for the bridges on said road, and also neglected for a long time to procure the right of way for its railroad, and that, by reason of this neglect on its part, the work was greatly delayed and hindered. They also allege that defendant, without their consent, changed the line and grades of its road, after the contract was entered into, whereby the amount of work necessary to its completion was greatly increased. They also charge that defendant, by its employes, published and reported among the laborers employed by them

upon said work that they were not pecuniarily responsible, and would not be able to pay for such labor as they might employ in doing the work, and that their report had the effect to cause many of their employes to quit work thereon, and to greatly hinder and embarrass them in the prosecution of said work.

They also allege that there was an accounting and settlement between the parties, in which it was mutually agreed between them that they should suspend work upon the contract, and leave the same in the hands of defendant, and that all differences between the parties regarding the non-completion of the work within the time specified should be settled, and no claim made by either party for any alleged failure to comply with the terms of the contract, and that the work then done should be computed and paid for; and that said work was then measured and computed, and the amount charged in the petition was found to be due them therefor.

I. The contract was entered into on the eleventh day of April, 1881. The work which plaintiff undertook to perform was the construction of all the earth work or grading required by defendant's engineer on the extension of its railroad north of Tara. The contract provides that the work should be finished according to the direction of the engineer and his assistants, and in conformity with the specifications which were embodied in the contract. It also provided that the work should be commenced by plaintiffs within ten days from the date of its execution, and should be completed on or before August 1, 1881, but that the first ten miles thereof should be finished on or before July 20. It also contains the following provisions: "Payments shall be made in the following manner, viz.: Once a month an estimate shall be made of the relative value of the work done, to be computed by the engineer, and within twenty days of said estimate the party of the first part (defendant) shall pay to the parties of the second part ninety per cent of said estimate. When all the work is completed according to the specifications, and in ac-

cordance with the directions and acceptance of the engineer, there shall be a final estimate made of said work, and a settlement and payment made within thirty days after receiving the proper certificate of said engineer." * * * *
* * * "And in case the said parties of the second part should at any time fail to employ force to complete the work within the agreed time, or to prosecute the work according to the directions of the party of the first part, or their engineer, the party of the first part may put on a force of men, and charge the expense of the same to said parties of the second part as so much paid on account of the contract. And for a failure to begin work at the time herein agreed upon, or on failure to prosecute the work with an adequate force, or for non-compliance with the directions of the engineer in regard to the manner of constructing it, or for any other omission or neglect of the parties of the second part of any of the requirements of this agreement and specifications, said engineer may, at his discretion, terminate this contract by a notice in writing delivered to one of the parties of the second part, or, if they are absent from the work, addressed to their residence by mail, which notice and failure shall exonerate the party of the first part from all obligations and liabilities arising under this contract the same as if the agreement had not been made; and the reserved ten per cent upon any work done by the parties of the second part shall be retained by the party of the first part as liquidated damages."

The evidence shows that plaintiffs entered upon the work about the first of May, and that they continued to work until about the ninth of September following, when they quit the work finally. At that time less than one-half of the work of grading said railroad was completed. On the second of September one member of plaintiffs' firm had an interview with the president of the defendant's company, at which its chief engineer was present. At this meeting it was agreed that plaintiffs should continue on the work for a few days, until

defendant could organize a force to continue the work, or pro-
cure other parties to prosecute it, when they should abandon
it. They did continue at the work until the ninth, when the
chief engineer of defendant served a notice in writing on
them, informing them that, on account of their failure to
prosecute the work under the contract with an adequate force,
and their omission of the requirements of the contract, he
elected to terminate it; and on that day they ceased to work
on the contract.

It appears from the evidence that on more than one occa-
sion, while plaintiffs were engaged on the work, their atten-
tion was called by the officers and employes of defendant to
the inadequacy of the force employed by them on the work,
and they were requested to increase it; and we are entirely
satisfied that the only reason defendant had for desiring
to terminate the contract at the time it was .terminated was
the dissatisfaction which its president and chief engineer felt
on account of the slow progress which plaintiffs had made in
prosecuting the work, and the doubts which they entertained
as to whether they would make any better progress in the
future.

That defendant had the right to terminate the contract at
that time cannot be doubted. The whole of the work was to
have been completed a month before that, whereas but little
more than one-third of it was completed at that time; and on
the ten miles, which were to have been completed by the
twentieth of July, not more than one-half the work was then
done, and, under the evidence, the matters pleaded in the re-
ply afford plaintiff no excuse for the delay. There was some
delay, it is true, on the part of defendant in procuring bridge
timber, and in procuring the right of way through one farm,
but this in no manner interfered with the general work of
grading the road. There was some change made in the line
and grades after the contract, which undoubtedly had the ef-
fect to increase the amount of work necessary to be done in
completing the road; but this was allowable by the terms of

the contract, and at the time the contract was terminated plaintiffs had performed but about two-thirds of the amount of work which they would have been required to perform under the contract, if the changes had not been made. They had difficulty in procuring men and teams to work on the contract, but it is not shown that this was occasioned by any fault or wrong of the defendant.

That the work was greatly impeded by the character of the weather is doubtless true, but this was a contingency against which no provision was made in the contract, and it consequently afforded plaintiff no excuse for the delay.

After the contract was terminated, defendant paid out a large amount of money to sub-contractors under plaintiffs, and to parties who had performed labor for them on the work. It was authorized by the contract to make these payments. But it was admitted on the trial in the circuit court that the work done by plaintiffs, at the rates provided for in the contract, amounts to $3,492.94 more than the whole amount of the payments made by defendant thereon, and the question to be determined from the facts is whether, upon the termination of the contract, defendant had the right to retain this sum as damages for the non-performance by plaintiff of the contract. Defendant claims the right to retain this money under the provision of the contract quoted above, which authorizes it to retain, as liquidated damages, on the termination of the contract as provided therein, the ten per centum reserved on any work done by plaintiffs under the contract.

In determining the question here involved, it is important, first, to determine whether the sum which the stipulation of 1. CONTRACT: the contract in question provides may be retained for stipulated damages: by defendant on the termination of the contract construction of. should be treated as liquidated damages, or as in the nature of a penalty. We think it should be treated as liquidated damages. In the first place, the parties themselves have so designated it. The terms of their stipulation are that the sum "shall be retained as liquidated damages." We

are aware that the question is not concluded by the terms which the parties have seen fit to apply to the same, but that it is to be determined by the court from a consideration of the nature of the agreement and the surrounding circumstances. 3 Parsons on Contracts, 157; *Foley v. McKeegan*, 4 Iowa, 1. But when, from the nature of the contract, the extent of the damages which would result from a breach thereof is difficult or impossible of ascertainment, the fact that the parties have deliberately named a sum which should be treated as liquidated damages on the happening of a breach is of the highest importance in determining the question.

In the next place, the nature of the contract was such as that it was entirely proper for the parties to determine in advance what measure of compensation should be allowed in case of a breach. The damages which would result to defendant from a failure by plaintiffs to perform any of their undertakings would necessarily be uncertain and incapable of ascertainment. A failure either as to the time or manner of performing the work would necessarily delay the final completion of the road, and derange all plans for its equipment and operation; and the damage and injury which would result from such failure would be matters of mere conjecture. It was therefore competent for the parties to agree in advance upon a certain measure of damage in case of a failure. And we think this view is abundantly sustained by the authorities. *Easton v. P. & O. Canal Co.*, 13 Ohio, 79; *Pierce v. Jung*, 10 Wis., 30; *Faunce v. Burke*, 16 Pa. St., 469; *Geiger v. R. R. Co.*, 41 Md., 4; *Dwinel v. Brown*, 54 Me., 468; *Hennessey v. Farrell*, 4 Cush., 267.

II. Having determined that defendant had the right to terminate the contract at the time it was terminated, and that the sum which the contract provides might be retained on a termination of the contract is in the nature of stipulated damages, it follows that defendant had the right to retain said money, unless

2. CONTRACT to build railroad: stipulated damages: waiver of: facts not amounting to.

it waived that right either, first, by special contract, or, second, by the manner in which the agreement was terminated.

It is claimed by plaintiffs that it was specially agreed between them and defendant's president, when it was arranged that they should abandon the work, that the work then done should be measured and computed, and that they should be paid the full sum to which it should amount under the contract. This arrangement was made, as we have seen, on the second of September. There were three parties present at the time, viz: John S. Wolf, a member of plaintiff's firm, Whitehead, the president of the railroad company, and the chief engineer who was in charge of the work. Whatever arrangement or agreement was made was between Whitehead and Wolf. The engineer does not appear to have taken any part in the negotiation. Wolf and Whitehead have testified as to what took place at the interview, but the engineer, although a witness in the case, was not examined by either party on that question. There is substantial agreement between the two witnesses that it was then agreed that plaintiff should quit the work and abandon the contract as soon as Whitehead could organize a force to carry on the work or procure other contractors to complete it.

They also agree that the work then completed by plaintiff should be measured with the view of determining the amount which they were entitled to receive therefor. But when they come to the question whether it was agreed that the reserved ten per cent should be paid over to plaintiffs, there is irreconcilable conflict between their statements. Wolf testifies positively and circumstantially that Whitehead's proposition was that the work should be measured, and the whole sum to which it amounted, including the reserved ten per cent, should be paid, and that he accepted that offer; while Whitehead swears, with equal positiveness, that not one word was said in the conversation about the reserved sum, or about waiving any claim which the company might have for damages on account of the failure of plaintiffs to complete the work in

accordance with the terms of the contract. We cannot say, then, that, considering alone the direct and positive testimony bearing on the question, there is a preponderance in favor of the claim of plaintiffs, for it is not shown by any direct or positive evidence that the one witness is more credible than is the other. It is claimed, however, by plaintiffs, that the transaction was in the nature of an accounting and settlement between the parties, and that it must be presumed that all matters between them were included and covered by it.

But there was nothing like an accounting between them. Plaintiffs made no claims against defendant which were considered or even alluded to in the conversation. The only questions considered and determined were, whether they would abandon the contract, and whether the work done under it should be measured with the view of determining the amount which should be paid them therefor; so that plaintiffs' claim is not at all strengthened by the character of the transaction. And when we come to the evidence with reference to the transactions subsequent to the agreement, it is equally unsatisfactory and inconclusive.

The engineer, who was present at the transaction as stated above, was not examined as to what took place at the time. 3. EVIDENCE: statements of agent to bind principal. Plaintiffs, however, introduced evidence of certain subsequent statements or admissions by the engineer, to the effect that it was agreed between Whitehead and Wolf, at the time of the transaction, that the amount which should be paid plaintiffs after the measurement of the work should include the reserved ten per cent. But this evidence, we think, is clearly incompetent. The engineer was an agent of defendant', it is true, but he took no part in the negotiations, and was entrusted with no duty with reference to it. He could not, therefore, bind defendant by any statement or representation which he might make with reference to it. 1 Greenleaf on Evidence, section 113.

Plaintiffs introduced evidence of certain acts and declarations of Whitehead's subsequent to the transaction, which

they claim tend to corroborate Wolf, and to support their claim that there was an agreement that they were to be paid the whole sum to which the work amounted, including the ten per cent reserved. Without setting out in detail the acts and declarations relied on, we deem it sufficient to say that, while some of them seem to be consistent with plaintiffs' claim, they are also entirely consistent with the claim made by defendant.

We have examined the evidence with care, and we are not able to say that there is a preponderance in favor of the claim that defendant, by contract, waived the right' to retain said money. It is insisted, however, by plaintiffs that, as the contract was terminated by the agreement of the parties, the right of defendant to retain the money as damages for the non-performance by plaintiff of its conditions was waived. But we think this position is not sound. The right of defendant to retain the money is dependent, under the terms of the contract, on two facts. These are, first, the failure of plaintiffs to perform their undertaking; and, second, the termination of the contract because of this failure.

We have already seen that plaintiffs were guilty of a breach of the contract, which entitled defendant to terminate it. It desired to terminate it for this reason alone, and it was so terminated; and it seems to us that the rights and obligations of the parties are not affected by the fact that the termination was effected by the consent of the parties, rather than by the notice provided for in the contract.

The claim of defendant for special damages because of plaintiffs' failure to perform is necessarily disposed of by the holding that the sum reserved under the contract is in the nature of liquidated damages. We reach the conclusion that the judgment of the circuit court should be

                                              AFFIRMED.