WEBSTER COUNTY, Appellee, v. JOHN NELSON and the UNITED STATES FIDELITY and GUARANTY COMPANY, Appellants.

**Drainage:** FORFEITURE OF CONTRACT: NOTICE. In this action against a drainage contractor and his surety for failure to perform his contract within the time stipulated, neither defendant can object to the sufficiency of notice of the county's intention to cancel the contract, where they were notified, subsequent to the accrual of the right to terminate it, to appear and show cause why the same should not be terminated and the work relet, and they in fact appeared and opposed such action.

**Same:** DEFAULT OF CONTRACTOR: RECOVERY BY COUNTY. The fact that the county refused to pay the contractor an installment for work done after he was in default and had been notified of the intention to terminate the contract, did not preclude the county from recovering on the contractor's bond for his failure to perform the work as agreed.

**Same:** FORFEITURE OF CONTRACT: RECOVERY OF DAMAGES. Where a drainage contractor has failed to construct the improvement in accordance with his agreement, the drainage district, or the county as its representative, may recover upon the contract and bond such damages as it has actually sustained upon a forfeiture of the contract. It is not limited in this respect by a provision in the contract that he shall forfeit a specific sum per day for delay in performing the work, for the entire damage may not be the result of mere delay.

**Same:** MEASURE OF .DAMAGES. The measure of damages for failure to complete the work as agreed is the necessary and reasonable cost of taking the work as the contractor left it and carrying it to completion; and the court was justified in accepting the sum fixed by the undisputed evidence of expert witnesses.

**Same:** LIABILITY OF SURETY. A surety's liability on a bond securing all of the obligations of the principal is measured by his liability; and where his liability was for the reasonable cost of completing the work in case of his default, the liability of the surety was not limited by a provision in the contract fixing a per diem as liquidated damages for delay.

*Appeal from Webster District Court.*—Hon. C. E. Albrook, Judge.

Tuesday, April 2, 1912.

The nature of this litigation and statement of the material facts will be found in the opinion.—*Affirmed.*

*Healy & Healy,* for appellants.

*Mitchell & Fitzpatrick, F. A. Grosenbaugh,* and *Kelleher & O'Connor,* for appellee.

Weaver, J.—On March 17, 1908, in proceedings pending before the board of supervisors of Webster county for the improvement of a certain drainage district, the appellant John Nelson became the successful bidder for the construction of a ditch according to designated plans and specifications prepared by the county's engineer. Soon thereafter Nelson entered upon the work, but the written contract therefor was not executed until a later date as hereinafter shown, during which period the only written evidence of the agreement was in the bid of Nelson, its acceptance by the board of supervisors and possibly the advertised terms of the letting of the contract. It seems to be conceded, however, that the bid was made and accept-

ed with the understanding that the work should be completed by January 1, 1909. For some reason Nelson made slow progress with the work and failed to finish it within the specified period, and a further agreement was entered into extending the time for the performance of the contract for one year. Still no written agreement was executed until July 7, 1909, when the board awoke to the fact that it not only had no formal written contract, but no bond securing its due performance as provided by law. On the date mentioned a contract was executed, by the terms of which for the amount of his bid, $14,691.36, Nelson undertook to do the work according to the specifications, and have the ditch completed on or before January 1, 1910, and stipulated that upon his failure to have the work done within the time thus limited that he would pay "as actual and liquidated damages ten dollars per day." On July 22, 1909, the defendant fidelity company as surety for Nelson made and delivered its bond to the board of supervisors, as follows:

Know all men by these presents: That we, John Nelson, of Ft. Dodge, Iowa, as principal and the United States Fidelity & Guaranty Company of Baltimore, Maryland, as sureties, are held and firmly bound unto the board of supervisors of the county of Webster and state of Iowa, for drain district No. 43 in the penal sum of $3,741.00 lawful money of the United States, well and truly to be paid to the said board of supervisors as sureties in trust for drain district No. 43. The condition of the above obligation is such that, whereas, the above named John Nelson agrees to construct county drain No. 43 according to a contract this day signed and bearing even date herewith: Now, therefore, if the said John Nelson shall well and faithfully perform and keep all the conditions of said contract on their part to be kept and performed, and shall well and truly protect the interests of said drain district in performance of their contract, then this bond is to be void, otherwise to remain in full force and effect. Witness our hands this 22d day of July, 1909. John Nelson. The United States Fidelity & Guaranty Company.

By the terms of Nelson's contract he was to be paid in monthly installments as the work progressed on the basis of eighty percent of the engineer's estimates of the amount earned; the remaining twenty percent being retained in the nature of a guaranty fund for the due fulfillment of the contract. On January 7, 1910, the work being still uncompleted, the board of supervisors ordered written notice served on Nelson and his surety that on January 12, 1910, it would take up the matter of reletting the contract to complete the ditch, and of enforcing a claim for damages by action upon the bond. The notice thus provided for was served. The hearing pursuant to said notice was continued from time to time until March 9, 1910, when a resolution was adopted by the board to the effect that Nelson, having failed to complete the ditch within the limit of time agreed upon, his contract should be declared terminated and forfeited, and that the work should be readvertised and contract relet at a public bidding. It was further ordered that the attorneys for the county bring action on the bond against Nelson and his surety to recover damages sustained by the failure to perform the work according to agreement. Acting upon the authority thus conferred, the contract was relet, and this action was then begun.

The petition sets out the substance of the facts hereinbefore recited. It is further averred that at the time the contract was forfeited the work of constructing the ditch was somewhat less than half done, that the amount actually earned by Nelson was $6,678.19, of which sum $1,607.96 is still in the hands of the county treasurer, and is applicable to the payment of the damages occasioned by Nelson's breach of his contract. But it is averred that said damages far exceed said guaranty fund for that upon the reletting of the work the best bid offered was $13,400, and the contract was let upon that basis, and that, after making due allowance for credits and deductions to which defendants may be entitled, there remains due the plaintiff from Nel-

son the sum of $6,398.29. For the recovery of this sum judgment is asked against both defendants upon their bond for $3,741, and against Nelson individually for the further sum of $2,657.29. To this claim the defendants, pleading separately, filed answer in denial of the allegations of the petition. At a later day the surety amended its answer, pleading that, by the terms of the bond, its liability can in no case be in excess of the agreed penalty of $10 per day for the period from January 1, 1910, when the time limit agreed upon expired to March 9, 1910, when the contract was declared at an end. It further alleges that under said contract the sum of $1,607.96 earned by Nelson has been withheld from him, and said surety company asks that it be subrogated to the right to demand and receive said fund, and that the same be applied to the payment of the penalty provided for by the terms of the contract to secure which the bond was given. The cause having been tried to the court, it was found and decided that the clause of the contract providing for liquidated damages of $10 per day for failure to complete the work within the time specified was void and of no effect; that the actual damages so arising from Nelson's failure to perform his contract were $4,716.03 upon which should be credited the amount withheld from him on estimates for work already performed, $1,607.96, leaving the net sum due plaintiff $3,108.07, for which the court awarded judgment on the bond against both Nelson and the surety company. From this judgment the appeal herein has been prosecuted.

I. The appellants each insist that no cause of action has been shown. It is not denied that the contractor failed to perform the work within the specified time limit, but counsel say that the board of supervisors could not rightfully stop said work, and proceed to a new letting without notice to the contractor, and that no such notice was given. Again, it is said the board of supervisors refused to pay the contractor his

1. DRAINAGE: forfeiture of contract: notice.

eighty percent of the engineer's estimate for work done in January, 1910, and, having thus itself violated the contract, it cannot now have the same enforced in its favor. Conceding that plaintiff's purpose to forfeit the contract should be indicated to the contractor and his surety by some adequate notice, and that such notice should be given within reasonable time after the default complained of, we think the record discloses nothing of which appellants can rightfully complain in this respect. The right to terminate the contract accrued on January 1, 1910, and on the 7th day of that month the board took cognizance of the matter, and caused defendants to be notified to appear and show cause why the contract should not be declared at an end and the work relet. This was done and both defendants appeared before the board to resist the proposed action. The hearing was continued from time to time until March 9th before final action was taken. It cannot be said defendants were taken by surprise, or that they were in any manner misled as to the attitude or purposes of the supervisors, and the defense of want of due notice is in our judgment without merit.

The same may be said as to the other objection above mentioned. The work done by the contractor in January, 1910, must have been performed (most of it at least) after the supervisors had indicated their purpose to terminate the contract. The damages, if any accuring from the contractor's failure to finish the job in due season had, already accrued and under such circumstances the board was within its legal rights in refusing to pay any more money. The contractor, being in default, and knowing that the board was demanding a forfeiture of the contract, could not reinstate himself or put the board in the wrong by going on with the work pending the final hearing. His rights are sufficiently observed and protected by the credit which he receives for such work in the final adjustment. None of the authorities

2. SAME: default of contractor: recovery by county.

cited by the appellants upon these issues appear to have any material bearing thereon.

II.   It being shown without material dispute that Nelson was in default in the performance of his contract, and the statute in such cases having explicitly conferred upon the board authority to relet the work and to maintain an action for damages against the delinquent contractor, we think it must be admitted that if damages resulted therefrom to the drainage district, or to the county as its representative, then plaintiff is entitled to recover to that extent.

3. SAME: forfeit-
ure of con-
tract: recovery
of damages.

Appellants take the position that, even if this be true, the contract entered into by the parties has limited the recoverable damages to $10 per day, and that the utmost extent of the period to which this stipulation can be applied is the time from January 1, 1910, when Nelson defaulted in his contract and March 9, 1910, when the work was relet to another person.   At first blush, this defense seems plausible, but it will not bear analysis.   A contract such as we are here dealing with may be violated by the contractor to the injury of the other party in different ways. For example he may fail to do the work according to the specifications which he has promised to observe in constructing the improvement, or he may construct it with all due fidelity to the specifications and fail to complete the job within the agreed time.

Generally speaking, it is entirely competent for the parties to a contract to provide in express terms what shall be the measure of damages for a violation of any one or all of its provisions, or they may agree that the party injured by the contractor's default shall at his option have two or more remedies.   It is not an unusual thing in contracts for the erection of buildings to provide that, if the work be not completed within a specified time, the builder shall pay as liquidated damages for such default a stated sum of

money for each and every day of the delay thus occasioned. The same contract not infrequently contains the further provision that, if the work be not completed by a given date, the owner may take possession and finish the job himself, applying thereto the unpaid portion of the contract price. In other words, the owner, if confident of the ability and purpose of the contractor to go on and complete the work after the time limit has expired, may permit him to do so and exact the liquidated damages; or, upon default being made, he many oust the contractor and charge up to him the reasonable cost of the work's completion. It is obvious he cannot have the benefit of both remedies. It is equally obvious that neither of the remedies excludes his right to recover other damages he may suffer by reason of a breach of the contract in other respects. For instance, suppose that under a contract such as we here mention the builder not only fails to perform the work within the time provided therefor, but further violates his agreement with respect to the kind or quality of the materials employed, no one would contend that the stipulation of a special measure of damages for delay in the work affects in any manner the right of the owner to recover general damages for such a breach. Coming, then, to the case in hand, we deem it unnecessary to consider whether the trial court was right or wrong in holding the agreement for liquidated damages on account of delay to be void. We may concede for the purposes of this case that the stipulation is entirely valid, and may be enforced in a case where that question is involved, but the trouble with this defense is that plaintiff is asking no recovery for mere delay in completing the work. Indeed, under the admitted state of the record, plaintiff could not maintain such an action. The statute under which the ditch was being constructed gave to the county or its board of supervisors the right to forfeit Nelson's contract if not completed within the time fixed. It was doubtless also within the discretion

of the board to permit him to go on and complete it after the time had expired.

Had this latter alternative been adopted, then, when the ditch was finally constructed by the contractor, his liability to pay the stipulated damages would be a pertinent question, but plaintiff chose to pursue the other course. Immediately upon the default becoming apparent, it availed itself of its statutory right, and proceeded to take the work out of Nelson's hands, and to let it to another. In so doing it abandoned its right to rely upon the agreement for liquidated damages by putting an end to the contract and proceeding by other means to complete the ditch. In other words, recurring to the illustration made use of above, .the county occupies precisely the situation of the owner whose building not being completed in contract time ousts the contractor, and proceeds to do the remainder of the work himself, or by another contractor. The damage to which the plaintiff is entitled is not compensation for delay. There had been substantially no delay beyond the day named in the extended contract when plaintiff began to move for the enforcement of its right to terminate the contract relation with defendant and to recover damages for his failure to construct the ditch as agreed. The measure of such recovery is neither obscure nor difficult. It is not necessarily determined by the figure at which the remainder of the work was relet. It is not to be augmented by penalties. No claim is made that so far as he had gone the work of Nelson was not reasonably well done. The thing which he had left undone was the construction of a certain definite proportion of the ditch described in his contract. The amount, then, for which he should be held responsible, is the reasonable and fair costs of the performance of the remnant of work which he ought to have done, but did not do, less the unpaid balance of the contract price, which balance should, of course, include the moneys

withheld from his earnings upon the work actually performed.

The case of *Wolfe v. Railroad Co.,* 64 Iowa, 387, on which appellants rely, is not in point upon the record before us. In that precedent which arose upon a contract for construction of a railroad grade, the company undertook to pay the contractor ninety percent of the engineer's estimates as the work progressed. No penalty or liquidated damages for mere delay was provided for, but it was agreed that upon failure of the contractor to begin the work promptly, or to prosecute it with an adaquate force, or to complete it in the time fixed, or for neglect or omission in performing the work according to specification, the engineer was authorized to terminate the contract, and in such case the reserved ten percent of the money earned by the contractor should be retained by the company as liquidated damages. The contractor failed to perform the work in time, and upon notice by the engineer the contract was forfeited. Action was then brought by the contractor to recover the reserve which had been retained by the company, and it was adjudged that the agreement for liquidated damages was valid and enforceable, and a recovery was therefore denied. The contract in the case at bar, as will be readily noted, is altogether different. The agreement here found for liquidated damages has reference to delay alone, while the one in the *Wolfe* case covered all damages of every kind which might result to the railroad company from the nonfulfillment of the contract on any respect.

Concerning the measure of damages actually applied in the present case by the court below, counsel seem to suggest that the price at which the work was relet was given controlling influence. It is true that the

4. SAME: measure of damages.

amount of the successful bid at the reletting was given in evidence, but we do not understand from the record that this rule was applied in fixing the amount of the plaintiff's recovery. Indeed, the opinion

filed indicates that the plaintiff's insistence upon such measure was rejected by the court, and damages were assessed upon the basis of the necessary or reasonable cost of taking the work where Nelson left it, and carrying it forward to completion.   Upon this question the plaintiff examined three expert witnesses, who substantially agreed in estimating the reasonable cost at about $13,000.   As the defendant offered no evidence upon this subject, we think the court was justified in accepting such estimate, and this sum diminished by the unpaid remainder of Nelson's contract price produces the amount for which judgment was entered.   The result is inevitable upon the record before us.

III.   The appellant surety company argues that in any event, whatever be the liability of Nelson upon his contract, the surety is not liable upon the bond for anything except the liquidated damages for which the contract provides.   If this be sound, then, of course, the surety is not liable for any amount in this action because we hold this provision of the contract is not involved in the issues presented.   But the objection cannot be sustained.   The bond did not simply secure payment of the stipulated damages for delay in the completion of the work.   It secured all the liability which Nelson's contract imposed upon him, and, as we have already pointed out, those obilagtions included liability for the reasonable cost of completing the ditch, should the county lawfully terminate the contract, and relet the work because of Nelson's default.   The surety's liability is to be measured by the liability of its principal, and this we have seen is for the sum for which recovery was had below.

5. SAME: liability of surety.

IV.   We have not attempted to pass upon the legal proposition whether the board of supervisors in letting a contract under the drainage statute may lawfully stipulate the amount of damage recoverable for failure of the contractor to carry out his agreement.   Its determination has not seemed necessary to the disposition of the case pre-

sented, and we leave its discussion and decision until a record is before us in which the proposition is directly involved.

The conclusions announced in the foregoing paragraphs upon the merits of the case are in harmony with those reached by the trial court, and the decree appealed from is therefore *affirmed.*