HUMBOLDT COUNTY, IOWA, Appellee, v. WARD BROS., JOHN WARD and — WARD, F. A. LITTELL, Receiver for Ward Bros., and the UNITED STATES FIDELITY & GUARANTY CO., Appellants.

**Drainage:** CONSTRUCTION CONTRACT: DELAY IN PERFORMANCE: CANCELLATION AND RELETTING OF WORK. Where the contract for the construction of a drainage system provided that the work should be completed within six months, but contained a provision that the time should be extended for a period equal to the time required for the supervisors to obtain the money with which to make the payments, and the full amount of money was ready within the six months and no extension of time was asked or granted, the board was justified, after the expiration of nearly three years' delay and a practical abandonment of the project, in cancelling the contract and reletting the work, as authorized by statute, and was entitled to recover from the contractor and his surety the difference between the contract price and the cost of completing the work; as the county was not required to wait more than a reasonable time for its completion after the time limit had expired.

**Same:** BREACH OF CONTRACT. Where a drainage contract provided for an extension of time for performing the work equal to that required

by the county for securing the money to make the payments, a delay in securing the funds was not a breach of the contract by the county.

**Same:**   CHANGE IN CONSTRUCTION AND CONTRACT.   A county is authorized by statute to make changes in the work of constructing a drainage system and in the contract for the work, and unless prejudicial to the progress of the work, or of a material and substantial character, or such as increases the liability, and these are made in violation of the contract, neither the contractor nor his surety can complain of the changes.   Nor can the contractor complain of changes in the work as it progressed, in which he acquiesced and for which he was paid, and which were greater than that provided for in the contract.

**Same.**   The parties to a drainage contract are presumed to have known and recognized the relationship of each other to the contract, and the extent and limitations of their power under the statutes authorizing the construction of drainage systems and contracts therefor.

**Same.**   The supervisors and engineer act for and represent the drainage district and property owners, and have no authority to change a drainage contract, or the plans and specifications, to the advantage of the contractor or his sureties, or to the prejudice of the district, without notice to the property owners and an opportunity to be heard on the question of damages resulting from the change.

**Same:**   TERMINATION OF CONTRACT:   FAILURE TO PERFORM:   DAMAGES. Where it was not only the duty of a drainage contractor to dig the ditches, but to present them on completion in a condition to comply with his contract, his failure to keep the ditches in repair is an element of damage, in a suit by the county to recover the difference between the contract price and the cost of completing the work, after termination of the contract because of his failure to perform within the stipulated time, or within a reasonable time thereafter.

**Same:**   COMPLETION OF WORK BY COUNTY:   ACTION FOR COST.   Where a drainage contractor fails to perform his contract within the stipulated time, the statutes authorize the supervisors to forfeit the contract and complete the work, and to pay therefor out of the balance of the contract price; and if that is insufficient to meet the expense they may sue to recover the balance from the contractor on his bond.   This right of action is not affected by the forfeiture of the contract, thus putting it beyond the power of the contractor to complete the work.

**Same:** FAILURE TO PERFORM:   NOTICE OF FORFEITURE:   LIABILITY OF SURETY. Where the bond of a drainage contractor contained no provision for notice to the surety in case of failure of the contractor to perform, but it appeared that the surety had notice that the work was not completed within the time specified in the contract, and no prejudice was shown because of failure to notify the surety of the intention of the county to terminate the contract on the ground of delay, or that the surety could have completed the work for less than the cost to the county, failure to notify the surety of the intention to forfeit the contract did not relieve it from liability on the bond.

**Same:** PUBLIC IMPROVEMENT:   LABORERS' LIENS. The failure of laborers upon a public improvement to file their claims with the corporation within the statutory time will defeat their right to funds due the contractor, as against other claimants who have secured rights therein after expiration of the time in which their claims should have been filed, but such failure will not defeat their rights against the contractor, who is absolutely liable to them for the work done.

**Same.** Independent of their statutory rights laborers upon a public improvement have an equitable right to that portion of the contract price remaining in the hands of the corporation, equal to or greater than the right of a surety, who was held liable for the difference between the contract price of the improvement and the cost to the corporation of completing the work, but who was given credit for the work done by the contractor, which included the work of such laborers.

**Same:** COMPLETION OF WORK BY COUNTY:   DAMAGES. Where a drainage contract was forfeited and the work relet, the county was entitled to recover from the contractor, for removing earth covered by the original contract, simply the difference between the cost of removal and the contract price.

**Same.** Upon the forfeiture of a drainage contract the county is not entitled to recover anything from the contractor or his surety for completing a portion of the work, where it was not shown what such work would have cost the county had the contract been performed.

**Appeal:** MODIFICATION OF JUDGMENT:   COSTS. Upon the modification of a judgment on appeal, which might have been had in the trial court on motion, the costs of the appeal will be taxed to the appellant who failed to make such motion.

*Appeal from Humboldt District Court.*—HON. A. D. BAILIE, Judge.

TUESDAY, JANUARY 27, 1914.

DRAINAGE District No. 4 having been established, the work of ditching and tiling the district was let to the defendant Ward Bros. A bond with surety was executed for faithful performance of the contract. Ward Bros. failed to complete the work. The county took charge of the work and relet it. Action to recover on the bond the difference between the contract price and what plaintiffs were required to pay to complete the work according to the terms of the contract.— *Modified* and *affirmed.*

*Carter, Brackney & Carter,* for appellant, United States Fidelity & Guaranty Co.

*J. M. Graham,* for appellants, Ward Bros., John Ward and F. A. Littell.

*John Cunningham* and *Sylvester Flynn,* for appellee.

GAYNOR, J.—In April, 1905, the board of supervisors of Humboldt county established a drainage district, and ordered the construction of certain open ditches and tile drains in certain townships. The district as established was known as Drainage District No. 4. The contract for the construction of the ditch was let to the defendants Ward Bros. on the 10th day of June, 1905. The contract, so far as material to this controversy provides:

First. That Ward Bros. shall furnish all material and labor necessary to construct and fully complete the open ditch and tilework, according to the maps, profiles, and specifications therefor.

Second. That they shall commence the work within a rea-
VOL. 163 IA.—33

sonable time after the board of supervisors of the county pro-
cures the money with which to make the payments provided
for in the contract, and have the work fully completed on or
before December 1, 1906. It was, however, especially under-
stood and agreed in the contract that Ward Bros. should have
an extension of time in which to complete the work equal to
the time consumed by the board of supervisors in securing the
money with which to make the payments therein provided;
the extension to cover sufficient time during the working
season.

Third. The contract further provided that, in considera-
tion of the faithful performance of the covenants and agree-
ments made by Ward Bros., the other party agrees to pay the
following prices for open and tile drain, to wit:

Open ditch ..........................11¢ per cubic yard.
18″ tile ................................$8.75 per rod.
16″ tile ................................ 6.75  "      "
12″ tile ................................ 4.75  "      "

Payments to be made as follows: On the 1st day of each
month during the progress of the work, the engineer in charge
shall furnish the first party with an estimate, showing the
value of all material and labor furnished by Ward Bros. dur-
ing the preceding month, 80 per cent. of said estimate shall
be due and payable at once, and the auditor of Humboldt
county shall issue to the first party a warrant on the drainage
fund of said county in payment thereof; said warrant to be
issued not later than the 5th day of each month.

Fourth. Upon the completion of the work, the retained
20 per cent. shall become due and payable.

On the 6th day of July, 1906, Ward Bros., as principal,
and the United States Fidelity Guaranty Company, of
Baltimore, as surety, duly made and executed and delivered
to said county, a bond in the penal sum of $7,500, conditioned
as follows: ''The condition of the above obligation is such

that, if the said Ward Bros. shall wholly and truly perform all the terms and conditions of a certain contract, made and entered into on the 10th day of June, 1905, by and between themselves and Humboldt county, acting for drainage district No. 4, then this obligation is to be null and void; otherwise to remain in full force and effect.''

On September 6, 1906, the county received from the sale of bonds issued on said drainage district the sum of $19,000; that in addition to this sum, it had collected from landowners, on assessments made, the sum of $8,000; that $27,000 was in the possession of the proper officers of the county for the use and benefit of the district on said date. In November, 1906, Ward Bros. commenced work on the improvement. The contract price of all the work required of Ward Bros. under the contract, amounted to approximately $26,967.05. During the progress of the work, estimates were made, as required by the contract, and 80 per cent. of the amount shown by each estimate was paid as therein required, except the sum of $222.45, which sum never appears to have been called for by Ward Bros. It appears that Ward Bros. had received in this way, prior to the institution of this suit, the sum of $16,525.17, which sum was either paid to Ward Bros. or to the receiver appointed by the court.

On or about the 19th day of October, 1908, the defendant F. A. Littell was duly appointed by the district court of Audubon county, receiver for Ward Bros., and was by the court authorized and empowered to continue the business of Ward Bros., and directed to proceed to carry out and complete the various contracts, including the one in question, according to the terms and conditions thereof, and thereafter did continue to represent Ward Bros., under the direction of the court, in the matter now in question. In November, 1909, Ward Bros. had not completed the contract, and the work had not been accepted by the board of supervisors. Thereupon the board of supervisors served notice upon Ward Bros. and the receiver to terminate the contract, and brought suit

upon the bond November 10, 1909, which suit was afterwards dismissed. Thereafter, on the 6th day of April, 1911, this suit was commenced, in which it was claimed that there was a breach of the bond given by Ward Bros. in that they had failed to comply with the requirements of the contract, in that they had failed to complete it at the time specified in the contract, or within a reasonable time thereafter. It appears that after the forfeiture, the board of supervisors relet the work, and the same was constructed and completed under another contract, and this action is brought to recover the difference between what it would have cost the county had Ward Bros. completed the work according to the terms of their contract, and what it did actually cost to complete the work. The cause was tried in equity without a jury, and a judgment and decree entered for the plaintiff, and from this defendants all appeal.

As to the facts involved in this suit, the trial court made the following finding:

First. That the open ditch and tile drains were not completed within the time mentioned in the contract. Second. That the work of construction was not pressed to completion, as provided in the contract, and that reasonable effort was not put forth by the contractors and the receiver to complete the work. Third. That the work was practically abandoned by the contractors, and no reasonable effort made to complete the system. Fourth. That there was no reasonable effort of the contractors and the receiver to respond to the demand of the board of supervisors that they hasten the completion of the contract. Fifth. That the open work and tile drains, so far as completed by the contractors and the receiver, were not done according to the contract and specifications, but that they failed so to do in divers particulars, to wit: (a) The ditch was not completed to the grade line as designated; (b) the ditch was not constructed with banks of the proper slope as contemplated by the contract; (c) the spoil or waste banks were not removed a sufficient distance from the ditch to leave a clear and unobstructed berm six feet in width, but, on the contrary, in many places the earth was

deposited at the edge of the ditch, thereby causing the banks
of the ditch to cave in and fill; (d) sods and earth were al-
lowed to overhang the edges of the ditch; (e) that the ditch
was never completed as provided in the specifications, but,
owing to the manner of construction, silt and earth collected in
the bottom of the ditch, and the same was never removed;
(f) such of the tile as was laid was irregular and uneven,
and not according to specifications; (g) that there was not a
substantial compliance with the contract in the manner of
construction of the open ditch, nor in the laying of the tile;
(h) there was an entire failure to construct and complete the
tile portion of the proposed improvement.

The first question which we will consider is that involved
in the contention of the plaintiff that the contract was not
performed in point of time according to the conditions of the
contract. The time fixed for completing per-
formance in the contract was December 1,
1906. This, by the contract, was not a defi-
nite and fixed limit for the performance, for
the reason that the contract itself provides,
practically, that Ward Bros. should have an extension of the
time in which to complete the work, equal to the time con-
sumed by the board of supervisors in securing the money with
which to make payments. The money was to be secured by
assessment upon the land within the drainage district. It
appears that the full amount necessary to meet all the re-
quirements of the contract was secured on September 6, 1906.
It appears that $8,000 of this sum was paid in, to the proper
officers, prior to this date. Therefore it appears that about
fifteen months was consumed by the board in securing the
full amount necessary to meet the payments. No further ex-
tension than that provided in the contract was ever asked for
or granted. It is true that after the expiration of this time
limit, the contractor continued on the work at intervals, until
stopped by the board. The county, in no event, could be re-
quired to wait longer than a reasonable time for the comple-
tion of the work, after the expiration of the time limit.

1. DRAINAGE: con-
   struction con-
   tract: delay in
   performance:
   cancellation
   and reletting
   of work.

The landowners within the district had been assessed for the construction of this ditch, and had paid their money into the hands of the proper officers to that end, and were entitled to have the contract completed, at least within a reasonable time. More than three years had elapsed from the making of the contract before the work was stopped by the board of supervisors, and nearly five years before this suit was commenced.

It is apparent from the record that the defendant, Ward Bros. and the receiver had, for all practical purposes, suspended the work upon this improvement before action was taken by the board. Thereafter, the work was relet, and finished to the satisfaction of the board.

We are of the opinion that the record disclosed affirmatively that the board was within its right in stopping the further proceedings on the part of the defendants and reletting the work at the time it did; that there was a failure on the part of. the defendants, to perform the work, according to their contract, within the time limit, or within a reasonable time thereafter, and the evidence upon this point fully sustains the finding of the court.

Section 1989-a10, as amended by chapter 118, Laws 33d General Assembly, provides:

If any person to whom any portion of said work shall have been let shall fail to perform the same according to the terms specified in his contract, then the cash deposited by him may be forfeited to the county, or recovery may be had in an action on the bond by the county for the benefit of the levee or drainage district, for the damages sustained and the work may be relet by the board in the manner hereinbefore provided, or the board may cause the uncompleted work to be done, paying therefor out of the balance of the contract price not theretofore paid over to the contractor, and if the expenses of so completing the work exceed such balance of the contract price, then the board of supervisors may cause an action to be brought in the name of the county in behalf of said district for the recovery of the amount of such excess from the contractor and his bondsmen.

Section 1989-a9 provides:

The engineer in charge of the construction shall furnish the contractor monthly estimates of the amount of work done on each section and upon filing the same with the auditor, he shall draw a warrant in favor of such contractor, or deliver to him improvement certificates, as the case may be, for eighty per centum of the value of the work done according to the estimate, and when said improvement is completed to the satisfaction of the engineer in charge thereof and so certified by him to the board and approved by it, the auditor shall draw a warrant in favor of said contractor upon the levee or drainage fund, or deliver to him improvement certificates, as the case may be, for the balance due.

It appears from this record that as the work proceeded, the engineer in charge of the construction, furnished the contractor monthly estimates of the amount of work done upon each section; that the same was filed with the county auditor, and warrants drawn, in favor of the contractor, for 80 per cent. of the estimate, and the same delivered to the contractor and paid out of the improvement fund; that the full amount of the 80 per cent. was paid, except the amount hereinbefore indicated, to wit, $222.45, which amount, though allowed, was not called for by the contractor. The delay in securing the funds for the payment of the contract price was contemplated in the contract itself, and therefore cannot be held to be a breach of the contract on the part of the county. The record affirmatively shows no breach of the contract on the part of the county in securing the funds, or in the payment of estimates as required thereby.

2. SAME: breach of contract.

It appears that some changes were made in the work as it progressed, and this is urged as a reason why the defendant and his surety ought not to be held in this action, but it affirmatively appears that these changes were not prejudicial to the progress of the work, nor did they in the least retard the plaintiff in any effort put forth to complete the work within a reason-

3. SAME: change in construction and contract.

able time. The statute gives the county power to make changes in the contract, after the work has been commenced, and points out how these changes may be effected, and the contractor must take notice of the authority of the engineer and the board in respect to these matters, and the surety cannot complain where no substantial, material change has been made in the work required by the contract, as indicated in the plans and specifications. See section 1989-a11 of the Code Supplement as amended by chapter 118 of the Thirty-Third General Assembly.

Some of the changes directed decreased the amount of work necessary to complete the contract, and where the work required was greater than that provided for in the contract, the contractor was paid for the excess. Some of the changes were never completed by the contractor, and if it had been completed, the labor and expense required to complete it in its changed condition was less than would have been required had it been made to conform to the plans and specifications. All these changes were made with the acquiescence of the contractor, or his receiver.

It is true that if the plans and specifications were changed so that the surety is damaged, or its liability increased, and these are made in violation of the contract, the surety is released, but then only to the extent that the liability is increased by reason of the change. The nature of the work contracted to be done suggests that, in its full performance and completion, some slight changes must be anticipated. The county acts as agent for the drainage district. The work is put in the hands of an engineer, under whose direction the work, under the statute, is required to be done. Their duties are only such as are especially granted by the statute. The law governing negotiable instruments does not apply to contracts of this kind. The contractor must take notice of the authority delegated by statute to the board of supervisors and the engineer. See *Monaghan v. Vanatta,* 144 Iowa, 119; *Haney v. Clarke,* 112 Minn. 516 (128 N. W. 1008); *City of*

*Denver v. Hendra,* 40 Colo. 42 (90 Pac. 1028, 11 L. R. A. (N. S.) 1029) ; *Steel Co. v. Van Buren County,* 126 Iowa, 606; *State v. Lafe Young,* 134 Iowa, 505; *Heath v. Albrook,* 123 Iowa, 559.

The duty of the contractor and his relationship to the other parties, the rights, duties, and obligations of the board of supervisors, the powers of the engineer, the consequences that result, or may result, from a violation of the contract, are practically all regulated by the statutes of this state, and therefore many of the authorities cited by appellant have no application to the condition here.

Many points are argued by appellants, and authorities cited in support of their contention which would be available to them, in this case, were it not for the plain provisions of the statute covering the same matters. The contract is presumed to have been made in full recognition of the provisions of the statute which govern and control the matter concerning which the contract is made. It must be presumed, in matters of this kind, that both parties knew, understood, and recognized the relationship of each party to the contract; the extent and limitation of his power, as they exist, under the statute which alone authorizes the procedure, the acts to be done, and the contract for the doing. The work, herein contracted to be done, was for the use and benefit of those residing in the drainage district, for their health, convenience, and welfare. They were most vitally interested in the work, and in the manner of its performance. They were required to pay for the work, as contemplated by the contract, and were entitled to have it completed within a reasonable time, and in a manner substantially giving to them that for which their agents contracted, and that for which they were required to pay. They are not complaining of any changes made in the contract, as affecting their substantial rights under the contract. Nor is the board complaining for them. The contractor who consented to these changes cannot complain. The surety on his bond cannot

4. SAME.

complain, where the changes are such as do not affect and do not increase the amount for which it would otherwise be liable upon its bond. See *Shorthill v. Ætna Indemnity Co.* (Iowa), 124 N. W. Rep. 613, third division of opinion; also *Monaghan v. Vanatta,* 144 Iowa, 119; also *Getchell & Martin v. Peterson & Sampson,* 124 Iowa, 599.

The board of supervisors and the engineer are acting for the drainage district; for the people who own property in the drainage district that is assessed; for the people who pay for the work done. They, therefore, would have no authority to change the contract, or plans and specifications, to the advantage of the contractor, or his sureties, or to the prejudice of the district. The statute expressly provides that if any changes are made in the district after it is established, which affect the property owners in the district, they are entitled to notice, and have a right to be heard on the question of damages that may result therefrom to them. See section 1989-a11 of Code Supplement, and section 1989-a8.

5. SAME.

It appears that after the contractor had performed the original work required by his contract in the digging of ditches, he failed to keep those ditches in repair, and failed to keep them in a condition that would allow them to perform the functions for which the ditches were originally constructed. It was his duty to do this, both under his agreement and under the law, which is a part of the agreement. See *Littell v. Webster County,* 152 Iowa, 206; *Webster County v. Nelson,* 154 Iowa, 660; *Haney v. Clarke,* 112 Minn. 516 (128 N. W. 1008), and cases hereinbefore cited.

6. SAME: termination of contract: failure to perform: damages.

This, then, was a proper element to be considered by the court in assessing the damages. It was the duty of the contractor, not only to dig the ditches required by his contract, but to present them upon completion, in a condition that met all the requirements of his contract, and the board had a right to charge against him, in completing the work, which

he had contracted to do, so much as it was required to expend in preparing the ditches originally dug by the contractor, so as to make them perform the functions for which they were constructed.   Or, in other words, to put them in a condition in which, under the contract, they were required to be when presented to the board for acceptance.

This is not an action to recover damages based solely upon a failure upon the part of the contractor to complete the contract within the stipulated time.   This case is bottomed on the thought that the contractor had not completed his contract, according to its terms, within the time limited, or within a reasonable time thereafter, and the board of supervisors, exercising the right given them by section 1989-a10, as amended by chapter 118 of the Thirty-Third General Assembly, relet the uncompleted work, caused it to be completed, as it should have been completed under the contract, and are suing to recover, in behalf of the district, the excess which they were required to pay to complete the contract, over and above the amount which the contract called for.

It is contended by appellants that, inasmuch as the plaintiff forfeited the contract and relet the unfinished work, it cannot maintain an action upon the contractor's bond, based

7. SAME: completion of work by county: action for cost.

upon a failure of the contractor to complete the work.   They base this contention upon the theory that one who prevents the doing of an act cannot recover for a failure to perform it, and many authorities are cited in support of this position.   *Boyd v. Bargagliotti,* 12 Cal. App. 228 (107 Pac. 150), and *Porto Rico v. Title Guaranty Co.,* 227 U. S. 382 (33 Sup. Ct. 362, 57 L. Ed. 561).   But these authorities, even though we should concede they are applicable to the point in question here, are not available to the defendants, because of section 9 of chapter 118 of the Laws of the Thirty-Third General Assembly.   This statute expressly authorizes the procedure herein followed, and authorizes recovery from the contractor and his bondsmen.   The last case, *supra,* we do not think is in point, for

the reason that the contract was forfeited before the time limited for its performance had occurred; that there had been no repudiation by defendant of the contract at the time of the forfeiture, and it could not be forfeited on the ground that it was likely that it would not be performed within the time limited, and it is in that case said: ''If, within the time allowed for performance, the plaintiff made the performance impossible, it is unimaginable that any civilized system of law would allow it to recover upon the bond for a failure to perform.'' We think more nearly in point upon this question, and adverse to appellant's claim, is the case of *United States v. McMullen,* 222 U. S. 460 (32 Sup. Ct. 128, 56 L. Ed. 269). *Boyd v. Bargaglotti, supra,* was an action to recover a balance due under a contract for the construction of a bridge. It was contended by defendant that the bridge was not completed within the time limited in the contract, and it was held, in that case, that the evidence justified the conclusion and finding that the failure to complete the bridge, within the contract time, was caused solely by the failure of the owner to supply materials as required by the contract. The condition there is not found in the record in this case. It nowhere appears that the defendants' failure to complete this contract within the time limited, or within a reasonable time thereafter, was prevented by any act of the plaintiff. Indeed it appears that the plaintiff was urging an early completion of the contract, and had frequently complained to the contractor and his bondsmen of such failure.

It is next claimed by the surety company that it received no notice of the intention to forfeit the contract, and therefore it ought to be held not liable for the expenses incurred by the plaintiff in completing the contract. It cannot be contended that it did not have notice that the contract had not been completed within the time limit. It had express notice, not only of the fact that it had not been completed within the time limit, but had notice that some time had

8. SAME: failure to perform: notice of forfeiture: liability of surety.

elapsed since the time limit, and the contract had not been completed. The contractor had been urged by the board to a speedy completion of the contract, and had failed to do so. This fact was made known to the surety company.

It will be borne in mind that this is not an action to recover a penalty stipulated, for failure to complete it within a particular time, but an action to recover the difference between what it cost the plaintiff to complete the contract and what it should have been required to pay had the work been completed according to the terms of the contract. It does not appear from the record that the surety company was prejudiced by failure to receive notice of the forfeiture, at the time it was made; that it could have done anything then that would have released it from the obligation which is now sought to be enforced against it, or that it could have completed the contract for less than it was completed by the county. Or, in other words, it does not appear that it was prejudiced the least by the want of notice. It is possibly true that if it had received notice and it so desired thereafter to assume or complete, or procure the contract to be completed, it might have done so. But there is no evidence that they could, or would have completed it for less than the amount incurred by the county in its completion. In the absence of some showing, it cannot be held that the surety company was prejudiced the least by the want of notice; and, without some showing to this effect, it cannot be held relieved from the obligation of its bond by reason thereof. Upon this point, see *Lakeside Land Co. v. Empire State Surety Co.,* 105 Minn. 213 (117 N. W. 431) ; *Hormel v. American Bonding Co.,* 112 Minn. 288 (128 N. W. 13, 33 L. R. A. (N. S.) 513).

The bond in this case makes no provision for notice to the surety of a failure on the part of the principal to perform the conditions of his contract, and, in the absence of such provision, we cannot hold that it had such a legal right thereto that a failure to give a notice of forfeiture relieves it

from the obligation of its bond, in the absence of a showing of prejudice resulting to it by reason thereof.

It may be said in the instant case, as was said by this court in *Webster County v. Nelson,* 154 Iowa, 660: "It cannot be said defendants were taken by surprise, or that they were in any manner misled as to the attitude or purpose of the supervisors, and the defense of want of due notice is in our judgment without merit." This case may be read with profit on other branches of the case at bar.

It appears that in the prosecution of this work, the contractor or his receiver became indebted to certain persons for work and labor performed by them, for the contractor, in the prosecution of the work; that, for some reason, these laborers had not been paid.

9. SAME: public improvement: laborer's lien.

They intervened in this action, and asked that a right be established in their favor in the retained 20 per cent. and that they be paid out of that fund in the hands of the county. They made these claims under the provisions of section 3102 of the Code of 1897, which provides: "Every . . . laborer or other person who, as subcontractor, shall perform any labor . . . upon any public improvement . . . shall have a claim against the public corporation . . . making such improvement, for the value of such services . . . not in excess of the contract price to be paid for such . . . improvement. . . . Such claim shall be made by filing, with the public officer through whom the payment is to be made, an itemized sworn statement of the demand within thirty days after the performance of the last labor . . . and such claims shall have priority in the order in which they were filed."

It is claimed, however, that these claims were not filed within the time limited in the statute, and therefore they lost the right to participate in the fund. This, as a general rule, is true as against others who have secured rights to the fund after the expiration of the time in which the notice might be served, but it is not essential to the validity of the claim

against the fund if the money has not been, in fact, paid to the contractor. See *Hug v. Hintrager,* 80 Iowa, 359; *Page v. Grant,* 127 Iowa, 249; *Frudden Lumber Co. v. Kinnan,* 117 Iowa, 93. As against the principal contractor, they have an equitable right to be paid out of this fund. The fund primarily belongs to the contractor. It is a fund created and held by the county for the purpose of discharging the obligation which the county assumed to the contractor, and for the purpose of paying for the work contracted to be done by the defendant. The contractor is absolutely liable to these laborers for the work which was done. See *Wells v. Cavenaugh,* 70 Iowa, 519; *Jordan v. Kavanaugh,* 63 Iowa, 152. Clearly then, the contractor cannot complain because the retained percentages were applied towards the payment of these labor claims. The surety on the contractor's bond has no lien upon, or legal right to this reserve percentage, and could not therefore equitably complain because this fund was used for the payment of men whose labor earned the fund.

Waiving all question as to the statutory right of these laborers to participate in this fund, they had a clear and equitable right thereto, equal to, if not greater than, the sureties on the bond. It is the duty of a court

10. SAME.

of equity to adapt itself to the situation of the parties, and make such decree as will effectuate justice between them. The contractor got credit for the work done under this contract. He is only charged with the cost of finishing the work which he should have done under the contract. The contractor and the sureties on his bond in the adjustment of the situation got credit for the work done by these laborers. See *King v. Ordway,* 73 Iowa, 735; *Creveling v. Banta,* 138 Iowa, 47; *Hale v. Kobbert,* 109 Iowa, 128; *Campbell v. Moorehouse,* 141 Iowa, 568.

There is no dispute in this record that these claims were filed with the proper officer. There is no dispute as to the amount, ownership, and balance due upon each claim. There is no dispute that the labor was done for the principal con-

tractor under his contract, and the only question touching these claims was whether, as a matter of equitable justice, these claimants were entitled to have their claims established against, and paid out of, the funds in the hands of the county, and the only objection urged to their payment out of this fund was that they were not filed within thirty days from the doing of the last work. As we have seen, the principal contractor could not have urged this objection, as long as the funds remained in the hands of the county undisposed of, and we are of the opinion that the surety on his bond cannot raise the objection, as against these men who earned the fund, and whose claims were ordered paid out of it. However that may be, we are satisfied, from an examination of the record, that most of these claims for labor so allowed and ordered paid were filed within the time prescribed by the statute. We think there was no error in allowing these labor claims to be paid out of the fund in the hands of the board.

It is next contended that the court erred in the assessment of damages. The court, upon this branch of the case, we think, erred in the following: That is, allowing the plain-

11. SAME: completion of work by county: damages.

tiff to recover for 16,529 cubic yards at 25 cents per cubic yard, at the actual cost to the county of removing it, while the record discloses that, of these number of cubic yards, 3,536 cubic yards was original work required to be done by the contractor, and, as to this, he should be charged with the difference between 25 cents per cubic yard and the contract price, 11 cents per cubic yard, which at 11 cents would amount to $388.96. That is, as to the 3,536 cubic yards, defendant should be charged with the difference between 11 cents and 25 cents per cubic yard, or, in other words, from the amount allowed there should be deducted for the 3,536 cubic yards, at 11 cents per cubic yard, $388.96.

Again, in computing the damage due for the reletting of part of lateral 4, which was changed to a tile line, it appears

that the reasonable value of labor and material necessary to complete this lateral, under the change made and agreed upon, was $894.88. It does appear that the cost of constructing it, as originally contemplated by the plans and specifications, would have been more, but these changes were agreed upon by the parties. The contractor was only required to complete it as changed. It does not appear what it would have cost the contractor to have performed the contract as changed, and it does not appear that this work was ever done, either as originally planned, or changed. It was only shown what the reasonable cost would be to complete it, as changed, at the time the plaintiff had charge of the work. The damage to the plaintiff would be the difference between what it was required to pay to complete the contract and what it would be required to pay had defendants not abandoned the contract. This is nowhere shown, and it does not appear that the plaintiff has suffered any damage by reason of this item. It appears that the reasonable value to complete this lateral would have been $894.88.

12. SAME.

To correctly compute the damage to the district, if it had paid that much to complete it, we should know what it would have cost under the original contract to have completed it, in order to estimate the loss to the plaintiff, and we think, in respect to these two amounts, the judgment is excessive, and that there should be deducted from the amount allowed the plaintiff the sum of $1,283.84, and the decree entered in the court below is modified to that extent. With this modification, the case is affirmed; but, as these errors might have been corrected on motion in the court below, and no motion was made to that end by appellant, the costs of this appeal are taxed to the defendants.

13. APPEAL : modification of judgment : costs.

With this modification, the judgment is *Affirmed.*

LADD, C. J., and DEEMER, EVANS, PRESTON, and WITHROW, JJ., concur.