STREATOR CLAY MANUFACTURING COMPANY, Appellant, v. HENNING-VINEYARD COMPANY et al., Appellees.

**PRINCIPAL AND SURETY:** Bond—Construction—Who May Sue. A surety company bond, prepared by the company itself, must be strictly construed against the company.   So *held* where the principal in the bond, in contracting for the construction of a public improvement for a municipal corporation, agreed (a) to pay for all material used "which may become a lien upon the consideration therefor, or claim against the town," and (b) to give bond conditioned accordingly, it being held that the bond so given was holden for the claims of both the city and materialmen, whether the materialmen perfected any lien or not.   (Secs. 3102, 3104, Code, 1897.)

**PRINCIPAL AND SURETY:** Bond—Construction—Contract Guaranteed. A surety bond guaranteeing the performance of a specified contract must be read and construed in the light of the contract so guaranteed.

**ACTIONS:** Parties—Action on Public Bonds. An action on a public bond may be maintained by anyone for whose benefit the same was given, though not specifically mentioned therein. So *held* in favor of materialmen in an action on a bond guaranteeing the payment of material used in the construction of a public improvement.

**CONTRACTS:** Construction—Belated Construction—Waiver. Deliberately adopting a certain construction of a contract may preclude one from subsequently setting up and insisting on a contrary construction.

PRINCIPLE APPLIED:   A contractor agreed to construct a public improvement and to pay for all materials used therein "which may become a lien on the consideration therefor or a claim against the town."  He gave a bond, with surety, to fulfill this contract.   After the work was completed, *and after the time had*

*expired in which materialmen might have perfected a lien against the fund,* the surety brought an action against the town and the contractor, alleging that the contractor was insolvent and had failed to pay for materials and that it—the surety—was in danger of being made liable therefor, and secured a judgment impounding $5,000 of said fund with which to discharge the claims of material-men. Later, in an action on the bond by a materialman, the surety pleaded that the bond was for the sole benefit of the town, and not for materialmen *who had not perfected a lien on the fund.* *Held,* the surety had waived this latter claim—was bound by its former interpretation of the bond.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

WEDNESDAY, JANUARY 19, 1916.

REHEARING DENIED FRIDAY, MAY 12, 1916.

ACTION brought by a subcontractor on a surety bond given by a principal contractor. The opinion states the facts. Judgment for defendant in the court below. Plaintiff appeals. —*Reversed.*

*Crosby & Fordyce,* for appellant.

*A. T. Cooper* and *Dawley, Jordan & Dawley,* for appellees.

GAYNOR, J.—In January, 1914, the plaintiff filed in the office of the district court of Linn County, Iowa, the following amended and substituted petition:

"That, on or about the 23d day of February, 1911, the defendant Henning-Vineyard Company entered into a written contract with the town of Mt. Vernon, for the constructing of town sewers, etc., and among other things agreed in said contract, as follows:

" 'The said Henning-Vineyard Company agrees and guarantees to pay for all material used in or about the construction of such sewers which may become a lien upon the consideration thereof or claim against said town, and the fulfillment of this agreement and guaranty as a part of this contract shall be secured by the bond of the contractor.' . . .

"That afterwards, on or about the 23d day of February, 1911, the defendant Illinois Surety Company and said Henning-Vineyard Company duly executed and filed with the treasurer of said town a bond in the sum of $14,300, conditioned that the said Henning-Vineyard Company should perform all the obligations of said contract. That afterwards, at the special instance and request of the defendants Henning-Vineyard Company, . . . this plaintiff furnished and delivered materials to · be used in the performance of said contract. . . . That all of said materials so furnished the said defendants Henning-Vineyard Company . . . were actually used in and about the construction of said sewers, in accordance with the terms of said contract, and said materials were accepted by said town of Mt. Vernon and now form a part of the sewer system of said town. · That the said defendant, Illinois Surety Company, has by its own act interpreted said bond and contract, which is a part thereof, and has taken security, securing it against the claim of the plaintiff herein in the following manner and by the following acts, to wit: That in August, 1912, the defendant Illinois Surety Company duly filed a bill of complaint in the District Court of the United States, Northern District of Iowa, Cedar Rapids Division, against the defendants Henning-Vineyard Company, Edwin C. Henning and Carl D. Vineyard, and Incorporated Town of Mt. Vernon, Iowa, and others, in an action entitled The Illinois Surety Company, a corporation, complainant, vs. The Incorporated Town of Mt. Vernon, Iowa, The Henning-Vineyard Company, a co-partnership composed of Edwin C. Henning and Carl D. Vineyard et al., defendants. And in said bill of complaint the said Illinois Surety Company made the following allegations, to wit:

" 'That on the 23d day of February, 1911, the said Henning-Vineyard Company, entered into a certain contract in writing with the town of Mt. Vernon, for furnishing all materials and labor for the construction of sewers, etc., a correct copy of which contract is hereto attached marked

Exhibit "A" and made a part hereof. That, on the 27th day of February, 1911, the contractors as principal and your orator as surety, made, executed and delivered to the said incorporated town of Mt. Vernon, a certain bond to secure the performance of the contract, a correct copy of which said bond is hereto attached and made a part of this orator's bill of complaint. That, after the execution and delivery of the contract and bond, the said contractors duly entered upon the performance of the work contemplated by said agreement and did, except as to the making of payments and discharge of claims for labor performed and material furnished as hereinafter alleged, fulfill the stipulations of said agreement and conform to the requirements thereof, and fully performed the same, and the said work was completed and accepted by the incorporated town of Mt. Vernon on the 11th day of May, 1912. That said town did fulfill and perform the stipulations of said agreement on its part to be performed and paid up all except the amount of $19,500, which amount the town withheld out of the contract price and still withholds said amount. That said contractors have not nor has anyone for them or on their behalf, performed the stipulations of said contract with reference to making payment for all materials and labor used in and about the construction of said sewers which may become a lien upon the consideration therefor or claim against said town, but have wholly failed and refused and still refuse to do so; that there is due to various persons for labor done and material furnished in the construction of said sewers a large sum of money aggregating in value $12,000. That the Streator Clay Manufacturing Company, a corporation, has brought suit against your orator in the district court of Linn County, Iowa, to recover the sum of $4,270.18, alleged to be due it for labor performed and materials furnished in the construction of said sewers in accordance with the contract above referred to, and it is alleged by many others of said claimants that your orator will be compelled to satisfy their said claims, together with interest due thereon, and said claim-

ants threaten to and will institute suits against your orator for the purpose of enforcing said alleged claims against your orator, and your orator is threatened with multiplicity of suits by reason thereof. Your orator further alleges that said contractors and each of them are insolvent and unable to pay off the debts so contracted for labor done and materials furnished in the construction of said sewers. . . . That any rights, if any, which the said contractors or either of them may claim to have to said funds so being held, are subordinate and subject to the rights of your orator to have said fund applied to the payment of claims for labor performed and materials furnished in the construction of the work in completing of said sewers. Your orator further says that it is without adequate remedy at law; that the circumstances in this case are such that it is without relief save in a court of equity; that there is involved in this case property or funds which it has a right to or interest in or equitable lien upon; that the same is in danger of being lost, removed or materially injured; that the appointment of a receiver is herein prayed to take charge of said funds, and ascertain and pay off the debts and claims due for labor performed and material furnished in said work. Your orator further says that it has no desire to avoid payment of any just debt for labor performed or material furnished for the construction of said sewers for which it may be legally liable, but only seeks to prevent misapplication of said funds and to secure the proper application thereof; that the question here presented involves a common or general interest of many persons; that the said creditors are numerous and it is impracticable to bring them before the court within a reasonable time. And your orator prays that it may have the relief in the premises to which in equity it is entitled to as the same shall appear upon the facts to be just and equitable and that it may have such relief the same as if it were here and now made the subject of a specific prayer; and to the end therefore that your orator may obtain relief in the premises, it humbly prays, first, that it be adjudged and

decreed that, by reason of the premises, the money coming from said town is a fund which the complainant as surety is entitled to have applied to the satisfaction of lawful debts for work done and materials furnished for said work.'

"That said complaint was duly verified and summons duly issued and served upon the said defendants in said action, and that afterwards, the said incorporated town of Mt. Vernon filed therein its answer to said bill of complaint, in which the said incorporated town admitted the allegations herein set out, except that it denies that it had in its possession the sum of $19,500, but admitted that it had in its possession about $9,000 in cash and about $10,000 in assessment certificates, and further in said answer averred as follows:

" 'This answering defendant denies that it is liable or may be made liable for any unpaid claims for labor and materials furnished the said contractors in the construction of said sewers and plant, but alleges and avers that said claims might become a lien upon the funds in the possession of this answering defendant and which was to be paid by said contractor under the terms of said contract.'

"That such proceedings were had in said suit so brought by the said Illinois Surety Company in the said United States District Court, that on the application and at the instance of the Illinois Surety Company the said district court entered and rendered a decree therein, providing among other things as follows, to wit:

" 'It is ordered, adjudged and decreed by the court that the said complainant, the Illinois Surety Company, is entitled to have the sum of $5,000 of the fund now withheld by the incorporated town of Mt. Vernon, Iowa, retained in the possession of said town until the alleged claim asserted by the Streator Clay Manufacturing Company against the said complainant, on its said bond be adjudicated and determined. That in the event it should be held that the said Streator Clay Manufacturing Company is entitled to recover the amount of its alleged claim against the complainant, the Illinois Surety

Co., then the incorporated town of Mt. Vernon is author-
ized to pay out of said fund of $5,000 the amount of any
judgment or decree entered against the Illinois Surety Com-
pany in said suit and in exoneration of its liability therefor.
That in the event there should be any balance of the said
sum of $5,000 remaining after paying of such judgment
or decree so rendered against the Illinois Surety Company in
favor of the said Streator Clay Manufacturing Company
in the said suit pending in the district court, then the balance
so remaining shall be paid over by the town to the Mercantile
Trust & Savings Bank or its attorney of record in this case.
. . . It is further ordered, adjudged and decreed by the
court that the above amount of $5,000 so impounded shall
be withheld in the form of sewer assessments issued for the
construction of said sewer out of the number of said sewer
certificates that it now holds of said fund due from the town
of Mt. Vernon, Iowa, for the construction of its sewer to the
Henning-Vineyard Company.' And said decree of said court
further provided as follows: 'The $5,000 to be withheld by
said town of Mt. Vernon, Iowa, until the final adjudication of
the claim asserted against the Illinois Surety Company by the
Streator Clay Manufacturing Company for labor performed
and materials furnished under the contract referred to in the
bill of complaint, the same to be held in assessment certificates.'

"And plaintiff avers that said $5,000 is so held as in said
decree provided. And plaintiff avers that by said acts above
set out the Illinois Surety Company has construed the said
bond and contract as having been made for the benefit of
persons furnishing labor and material used in and about the
construction of said sewers for which a lien or claim might
be filed with the town of Mt. Vernon, Iowa, and plaintiff
avers that in truth and in fact the said bond and contract
was made for the benefit of parties furnishing labor and
material used in and about the construction of said sewers,
the claims for which were lienable. Plaintiff further avers
a breach of said contract and bond by all the defendants

herein, in this, to wit, that the said Henning-Vineyard Company, . .. . have not, neither has any person for or in their behalf paid to this plaintiff for the materials so furnished and used, though the claim for said materials was lienable or claimable, and though the consideration to be paid therefor is long past due. . . .

"Wherefore plaintiff asks judgment against the defendants and each of them in the said sum of $4,270.18 with 6 per cent. interest per annum from October, 1912, and for costs of this action."

The contract referred to in the petition, so far as material, is as follows:

"This contract, made the 23d day of February, 1911, between Henning-Vineyard Company and the town of Mt. Vernon, Iowa, Witnesseth:

"That for the consideration hereinafter named the said contractor agrees to furnish all material and labor for the construction of sewers, sewer outlet and disposal plant in said town according to the detailed plat, specifications and drawings of the engineer of said town and the ordinances, resolutions and notice to contractor pertaining thereto, and the proposal of said contract as accepted by the town, all of which are hereby referred to: To commence said work by April 10th, 1911, and finish and complete the same before the 1st day of December, 1911, in a good, substantial and workmanlike manner in all respects as required by said detail plans and specifications therefor hereto attached marked Exhibit 'A' and made a part hereof. Said sewers to be constructed of first quality vitrified sewer pipes, and all man holes, flush tanks and settling tanks to be constructed of Portland cement concrete, as set forth in said plans and specifications therefor, and are to be located and constructed as follows, (Here follows the designation of the streets of the town of Mt. Vernon in which said sewers are to be laid). *And further agrees and guarantees to pay for all material used in and about the construc-*

*tion of said sewer which may become a lien upon the considera-*
*tion therefor or claim against said town and the fulfillment of*
*this agreement and guaranty as a part of this contract shall*
*be secured by the bond of said contractor.   And in considera-*
*tion of the agreements and covenants herein contained and*
*upon the complete fulfillment thereof on the part of the con-*
*tractor,* said town of Mt. Vernon agrees to pay therefor in the
manner and out of the funds hereinafter stated as follows.
[Here follows a proposition of said corporation as to what
work would be done and how, and then this:]

"And I hereby agree to enter into a contract within 10
days from date of your acceptance of this proposal and to
finish and complete the work accordingly by the first day of
December, 1911, and to furnish a bond with such sureties for
the fulfillment and performance of said contract and the pay-
ment for all materials and labor used in or about the same
which may become a lien on the consideration therefor or a
claim against the said town as shall be approved by said council
in case the above proposal be accepted, and a default or failure
on my part to enter into a contract for the construction of said
sewer and giving bond for the fulfillment thereof within said
10 days, I hereby agree that the sum of $500 deposited with
the clerk or treasurer of said town, certified check therefor
and the amount therein specified shall, at the option of said
town council, be forfeited to said town as liquidated and
agreed damages.   Dated at Mt. Vernon, Iowa, Feb. 21, 1911.

(Signed) "HENNING-VINEYARD COMPANY.
"TOWN OF MT. VERNON."

The bond referred to is as follows:

"Know All Men By These Presents, That the Henning-
Vineyard Company, as principal, and the Illinois Surety
Company, as surety, are hereby held and firmly bound unto
the said town of Mt. Vernon, in the penal sum of $14,300.00,
and the payment thereof, to said town of Mt. Vernon, its suc-

cessors and assigns, and the Henning-Vineyard Company,
the said Illinois Surety Company of Chicago, Illinois, do
hereby jointly and severally bind themselves, their successors
and assigns firmly by these presents. The condition of the
above obligation is such that if the said Henning-Vineyard
Company shall furnish all material and labor for constructing
town sewers, in said town of Mt. Vernon, and finish and com-
plete the same on or before the 1st day of December, 1911,
in accordance with the terms and conditions, agreements and
guaranties contained in the contract thereof or made a part
of said contract by reference between said Henning-Vineyard
Company and the town, of even date herewith, then this obli-
gation shall be void, otherwise to remain in full force and
virtue.''

To the amended and substituted petition so filed, the
Illinois Surety Company demurred, alleging that the facts
alleged did not entitle the plaintiff to the relief demanded,
for the following reasons:

That the allegations show that the bond sued on was
made for the protection of the city only, and not for the
protection of any claimants who failed to establish a lien or
preference against the fund remaining in the hands of the
town. That the allegations do not show that the plaintiff ever
served any notice upon the town or any of its officers, or
any itemized statement of its claim, as required by Section
3102, Code, 1897. That the allegations do not show that the
plaintiff has any claim against the fund or against the town,
or that the town is under any liability to the plaintiff. That
the plaintiff was not a party to the suit in which it was claimed
the Illinois Surety Company construed the contract; that
any construction put upon the bond in said suit is not avail-
able to the plaintiff. That the allegations do not show any
estoppel or any of the elements of estoppel, in favor of the
plaintiff. That the allegations made by the surety company
in the suit in the United States court did not make any con-

cessions or put any construction upon the bond that would render the company liable to the plaintiff. That any admissions made by the town of liability would not be binding upon the surety company.

This demurrer was sustained by the court. To this demurrer the plaintiff duly excepted and appealed.

The original petition was filed August 3, .1912, and, as filed, asked relief against all the defendants named in the amended and substituted petition, and also against the town of Mt. Vernon. The last item in plaintiff's account was furnished on the 11th day of August, 1911. In August, 1912, the Illinois Surety Company filed its bill of complaint in the district court in and for the northern district of Iowa, referred to in plaintiff's amended and substituted petition. At the September, 1912, term of court, all the defendants appeared to the original petition and filed a demurrer thereto. This demurrer was sustained on January 13, 1914. In due time thereafter, the plaintiff filed the amended and substituted petition hereinbefore set out. The amended and substituted petition now involved in this suit was filed after the decree had been rendered in the United States district court, referred to in the petition, and after a decree had been entered as follows:

"It is ordered and adjudged that the Illinois Surety Company is entitled to have the sum of $5,000 of the fund now withheld by the incorporated town of Mt. Vernon, retained in the possession of said town until the alleged claim asserted by the Streator Clay Manufacturing Company against the surety company on its bond is adjudicated and determined. That in the event it should be held that the Streator Clay Manufacturing Company is entitled to recover the amount of its alleged claim against the surety company, then the incorporated town of Mt. Vernon is authorized to pay out of said fund of $5,000, the amount of any judgment or decree entered against the Illinois Surety Company in said suit, and in exoneration of its liability therefor."

The date when this decree was entered does not appear. We must assume that it was entered within a reasonable time after the suit was brought, that is, after August, 1912. The amended and substituted petition on which the plaintiff now relies was not filed until January, 1914, and after the demurrer to the original petition was sustained. This brings us to a consideration of the real controversy.

The allegations in the *contract* between the town and the Henning-Vineyard Company, upon which the plaintiff relies to hold the surety company liable to this plaintiff, are found in the following provisions of the contract:

1. PRINCIPAL AND SURETY: bond: construction: who may sue. "And further agrees and guarantees to pay for all material used in and about the construction of said sewer which may become a lien upon the consideration therefor, or claim against the town, and the fulfillment of this agreement and guaranty as a part of this contract shall be secured by the bond of such contractor."

And the further provision:

"To furnish a bond with such sureties for the fulfillment and performance of said contract and the payment of all materials and labor used in and about the same which may become a lien on the consideration therefor or a claim against the town."

To secure the fulfillment of the duties assumed by Henning-Vineyard Company to the town in the contract, the bond in suit was executed. This bond provided that the Henning-Vineyard Company, as principal, and the Illinois Surety Company, as surety, are held and firmly bound unto the said town, and that they thereby jointly and severally bound themselves to perform the conditions of the bond. The condition of the bond referred to and relied upon by the plaintiff is as follows:

"The condition of the above obligation is such that if the said Henning-Vineyard Company shall furnish all material and labor for constructing town sewers, and finish and com-

plete the same on or before the 1st day of December, 1911, *in accordance with the terms and conditions, agreements and guaranties contained in the contract* or made a part of said contract between the Henning-Vineyard Company and the town, then the obligation shall be void, otherwise to remain in full force and virtue."

It is the contention of the plaintiff that with these conditions, agreements and guaranties in the contract hereinbefore set out, and with this condition in the bond, the surety company bound itself to perform every condition, agreement and guaranty contained in the contract, in the event the same was not performed by the Henning-Vineyard Company, for which the fund or the town might be made liable under the terms of the statute; and this, without any limitation. That if, in the progress of the work, any labor or material was furnished by anyone which might, by following the provisions of the statute, become a lien upon the consideration to be paid, or a claim against the town, the contractor stipulated and agreed and guaranteed to pay for the same personally, and without resort to the fund and without embarrassing the town by having claims filed against it as provided in Section 3102, Code, 1897.

This contention depends upon the construction to be given to the contract between the town and the principal contractor. It is difficult to make it any plainer than is made by the wording of the contract itself. The contractor agreed to put in this sewer for the town. He agreed to furnish the labor and material. In doing this, he might and did create obligations which the parties who held the obligations might make liens against the fund or against the town by pursuing the course pointed out in Section 3102. As soon as the obligation was created, the materialmen or laborers had a right to and could make their claims a lien against the fund, or against the town, as provided in Section 3102, which reads:

"Every . . . laborer or other person who, as subcontractor, shall perform labor upon or furnish materials

for the construction of any public . . . improvement . . ., shall have a claim against the public corporation constructing such . . . improvement for the value of such services and material, not in excess of the contract price . . . Such claim shall be made by filing with the public officer through whom the payment is to be made an itemized sworn statement of the demand, within thirty days after the performance of the last labor or the furnishing of the last of the material, and such claims shall have priority in the order in which they are filed.''

The plaintiff's claim was one which could have been made a claim against the town by following the provisions of this statute. The town, with this possibility in view, exacted of the contractor an agreement on his part and a guaranty to pay for all materials used in and about the construction of the sewer ''which may become a lien upon the consideration or a claim against the town;'' and, to secure the performance thereof, exacted from him an agreement to give a bond securing its performance. In pursuance of this agreement, this bond was executed and this surety company undertook that, if the principal contractor failed to furnish all material and labor for constructing the sewer, and failed to carry out all the agreements and guaranties contained in the contract, or made a part of the contract, it bound itself jointly and severally with the principal contractor to do so. The principal contractor bound himself to perform all the conditions, agreements and guaranties contained in his contract. The surety company in its obligation undertook to perform these agreements and guaranties, if not performed by its principal. One of these was to pay for the material furnished.

This was clearly a contract made for the benefit, not only of the town, in that thereby it avoided complications with subcontractors, but for the benefit of the subcontractors themselves, and this by the very terms of its

2. PRINCIPAL AND SURETY: bond: construction: contract guaranteed.

bond, read in the light of the contract between the principal contractor and the town. The contract is particularly referred to in the bond,

and the surety company undertook to insure the performance of the contract on the part of the principal contractor, with all its conditions, agreements and guaranties, in these words, when used conversely:

"If the said Henning-Vineyard Company shall not furnish all material and labor for the construction of the town sewers and finish and complete the same on or before the 1st day of December, 1911, in accordance with the terms, conditions, agreements and guaranties contained in the contract, then this bond shall be in full force and effect."

The undertaking of the principal contractor was that he would furnish all material and labor, in accordance with the terms, conditions, agreements, and guaranties contained in the contract, and pay for the same, provided they were such that, under the statute, they might become a lien upon the consideration or against the town, and, as a part of the contract, and to secure the fulfillment of the agreement and guaranties therein contained, he would execute a bond securing the performance. The town was not interested in having the principal contractor pay for any labor or material such as might, under the statute, become a lien upon the fund or a claim against the town. This it had an interest in, to a limited extent, and a right to exact an agreement from the principal contractor that he would pay these claims, and that he would execute a bond conditioned that he would pay them. His agreement was that he would execute a bond conditioned that he would pay them, without requiring the person entitled to payment to proceed against the town for the fund, as provided by Section 3102. This is a surety company. The bond was prepared by it. It must be strictly construed against the company. Having made reference in the bond to the contract and the conditions, guaranties, and agreements in the contract, and having bound itself as surety to the performance of the contract, it must be holden to have undertaken the performance of all the agreements of the contract. It will be noted that in the bond itself, the surety, choosing its own words, said:

"The condition of the above obligation is such that if the said Henning-Vineyard Company shall furnish all material and labor for constructing town sewers and finish and complete the same before the first day of December, 1911, in accordance with the terms and conditions and agreements and guaranties contained in the contract."

It must be assumed that they knew that their principal, in the principal contract, had stipulated and agreed and guaranteed that he would pay for all material used in and about the construction "which may become a lien upon the consideration," and that he undertook and agreed, in fulfillment of these agreements and guaranties, and as a part of the contract, to secure its performance on his part by a bond.

In the construction of all contracts, the purpose, in and through construction, is to arrive at the intent of the parties. Where the intent of the parties is so plainly expressed that a mere reading of the contract leads the mind at once to a satisfactory conclusion as to what the parties intended by the contract, then there is no room for construction. When courts are called on to construe contracts, it is their duty to ascertain, if possible, from the contract itself, what the parties meant by it. Resort must be first had to the language contained in the contract, to the circumstances and conditions under which the contract was made, and the rights and obligations of the parties as created by the contract.

The language of the original contract clearly exposes the purpose of the town and of the principal contractor to avoid trouble and annoyance on account of unpaid bills for labor and material, and to avoid any annoyance and disadvantage to the town by reason of the filing of claims under the provisions of the statute. The surety was bound to know of this purpose and this intent of the original contracting parties, from the very nature of the contract itself. With this purpose and object in view, as expressed in the original contract, it is easy to determine what the parties meant when they used the terms in the contract:

"And further agrees and guarantees to pay for all material used in and about the construction of said sewer which *may become a lien upon the consideration therefor, or a claim against the town.*"

Looking to the contract and considering its purpose, the contract should be construed to mean that all persons who have the right to acquire liens upon the property are entitled to the benefit of the contract. The agreement was to discharge all indebtedness that may be incurred by the contractor which may or might become a lien by following the provisions of the statutes, and this regardless of whether a lien was acquired upon the property or not. The contract expressly provides for the payment of the claims of those who are entitled to acquire a lien. Any other construction would nullify the plain and manifest intent of the parties. The bond was conditioned that the principal contractor should perform this, to wit, pay for all material and labor which may become a lien upon the fund, whether the party took the necessary steps to effectuate the lien or not. The purpose was to prevent the taking of the steps which would create a lien, and, to avoid this, gave to the persons who were entitled to a lien a right to pursue the bond.

As bearing upon this question, see *Getchell & Martin Lbr. Co. v. Peterson,* 124 Iowa 605; *Gwinn v. Wright* (Ind.), 86 N. E. 453; *Ochs v. Carnahan* (Ind.), 76 N. E. 788; *National Surety Company v. Foster Lumber Co.* (Ind.), 85 N. E. 489.

The agreements in the contract and the giving of the bond were anticipatory of the rights conferred by Section 3104, Code, 1897, which provides:

"The contractor may at any time release such claim by filing with the treasurer of such corporation a bond for the benefit of such claimant, in sufficient penalty and with sureties to be approved by such treasurer, conditioned for the payment of any sum which may be found due such claimant. Such contractor may prevent the filing of such claims by filing in like manner a bond conditioned for the payment of persons

who may be entitled to file such claims, and actions may be brought on any such bond by any claimant within one year after his cause of action accrues.''

Our construction of this bond leads to the conclusion that the contract was made and the bond intended to secure the performance by the contractor of his obligation to pay for materials for which a claim might be made

3. ACTIONS: parties: action on public bonds.

against the consideration named in the contract, without requiring the claimant to proceed under Section 3102, and we think there is no doubt that it was made to prevent the actual making of such claims against the city, as provided in that section, or, at least, to avoid the necessity of embarrassing the city by the filing of such claims. Section 3467, Code, 1897, authorizes the bringing of this action upon this bond. Subcontractors have a right, under the statute, as long as the consideration is in the possession of the corporation, to have the amount in the hands of the corporation applied to the payment of their claims, as against the principal contractor. No doubt this plaintiff would have filed his claim and proceeded against the fund, if it had not been for the provisions of this bond. It was a claim that he might have filed and thereby secured payment out of the fund. The principal contractor agreed to pay this claim without requiring the plaintiff to proceed under this statute, and agreed to give a bond conditioned that he would pay it. He did give the bond, and the bondsman is now holden.

As bearing upon this question, see *Hipwell v. National Security Co.*, 130 Iowa 656, 660; *Humboldt County v. Ward Bros.*, 163 Iowa 510; *Thompson & Peterson v. Stephens*, 131 Iowa 51; *North St. Louis Planing Mill Co. v. Christophel* (Mo.), 137 S. W. 295.

It is our opinion that this bond, when construed in the light of the contract, gives to this plaintiff a right to resort to the bond for payment of his claim.

On the other proposition, involved in the bringing of the suit by the surety company in the Federal court, we have, to

say that, when this suit was brought, the time in which plaintiff might have filed his claim had long

**4. CONTRACTS: construction: belated construction: waiver.**

since passed, and this fact was known to the surety company. If the contention now made by the company is to be upheld, it would seem that that was not the contention of the company at the time it brought this suit in the Federal court. If this contention is true, neither the town nor this surety company was, in any way, holden to this plaintiff; for the plaintiff had not complied with any of the requirements of Section 3102 which would give it a lien on the fund or claim against the town. The surety company must have instituted this suit solely for its own protection. If its present contention is right, there was no liability and it needed no protection, and had no right to maintain the suit. It had no interest in the fund or the disposition of the fund, so far as this plaintiff was concerned; yet it procured a decree in its favor requiring the town to impound $5,000 to be held for its use and benefit, and as a protection to it against the claim of the plaintiff which, it says now, never existed, or at least did not exist at the time the suit was brought. We think that, by this action, it waived the claim it is now asserting, recognized its liability upon the bond, and cannot now be held to dispute it. It put its own construction upon the bond, and said:

"We are holden to this plaintiff; we are afraid that the fund out of which payment might be made may be dissipated; we have a right in this fund to the extent of this claim, if we pay it; we want so much of the fund set aside to protect us;" and a decree was entered accordingly.

Under the whole record, we think that the court erred in sustaining the demurrer, and the cause is, therefore,— *Reversed.*

DEEMER, LADD and SALINGER, JJ., concur.