R. W. PRINGLE *et al.*, v. DES MOINES INSURANCE COMPANY, Appellant.

**Insurance:** FORFEITURE. Insured made a contract to sell the property which was to stand as a bond for a deed, but upon which no payment was made nor possession delivered. A clause provided that either party might recede from the contract on payment of $500 as liquidated damages. *Held*, that there was no such change of title or ownership as would avoid the policy.

PROOF OF LOSS: *Waiver.* After a fire, insured's attorney wrote the company informing it of the nature of the fire, the loss, and the number of the policy, and the company's secretary replied that the notice would receive prompt attention. *Held*, that the com-

pany waived the provision of acts Eighteenth General Assembly, chapter 211, section 3, that proof of loss, shall be accompanied by an affidavit stating how the loss occurred.·

Same. The court cannot hold that a provision of a policy, that no stipulation can be changed except in a certain manner prevents the waiver of the sufficiency of the proofs or loss in any other manner, where the record does not show that the policy contains any stipulations as to the form or contents of proofs of loss.

*Appeal from Jefferson District Court.*—Hon. Robert Sloan, Judge.

Saturday, December 17, 1898.

Action to recover upon a policy of insurance against fire. The cause was tried to the court, and from a judgment in plaintiff's favor the defendant appeals.—*Affirmed.*

*McVey & McVey* and *Leggett & McKemey* for appellant.

*Raney & Simmons* for appellee.

Waterman, J.—The policy in suit was issued upon the dwelling house, outbuildings, furniture, and other household articles belonging to plaintiff. There was a loss by fire of the property, and the present action is to recover therefor. The policy contained this condition: "If any change take place in the title, ownership, or possession by mortgage, judgment, lien, lease, sale, incumbrance, or any other manner whatever (except by succession or devise, consequent upon the death of the assured), unless the assent of the company be indorsed thereon, then this policy shall immediately terminate." One defense is that this condition was violated by the assured. The facts as to this matter are that the policy was issued February 7, 1895. The fire occurred October 24th of the same year, and on the twenty-eighth day of August preceding the fire Pringle and wife entered into a contract with one O. S. Hall, which is as follows: "That the said parties of the first part [the plaintiffs] have this day bar-

gained and sold, and do hereby agree to convey, to the said second party [Hall] the following real estate, to wit. [Here follows a description of the farm of one hundred and twenty acres, upon which, the policy recites, the insured buildings were located.] The agreed price for the said real estate is the sum of four thousand one hundred dollars, which sum is to be paid as follows: Three hundred dollars on the first day of November, 1895, and the remainder of three thousand eight hundred dollars on the first day of March, 1896. And the said first parties do hereby agree and bind themselves to make and execute to the said second party a good and sufficient warranty deed to the said premises, and to furnish a good and sufficient abstract of title to the same, showing a good title to the said land; and to deliver the same to the said second party on full payment being made as above provided. And they agree that this contract shall stand as a bond for a deed for the said premises, and that the same shall be of full force and effect as such in law and equity. And it is further agreed and understood that time is of the essence of this contract in all particulars, and shall be so considered. It is further understood and agreed that the said second party shall have immediate possession of the stubble land on the said farm for the purpose of plowing the same; that he shall have possession of all of the pasture land except the stock pasture on the first day of November, 1895, and that he shall have possession of the stock pasture as soon as the corn is gathered, not sooner than the said first day of November, 1895; that he is to have possession of the house on the first day of December, 1895, and that he is to have possession of all the other buildings on the farm on the first day of November, 1895, except that the said first parties are to have the use of a crib for their corn for a longer period if they should need it. The said second party is to pay one dollar in addition to the price above named, and the farm bell on the place is to be left there. And it is especially understood and agreed that the said farm is to be kept in as good condition as it now is, unavoidable

accidents excepted, and the same is to be delivered to the said second party as the same now is except above. It is further understood and agreed by the parties to this contract that each party shall secure to the other a forfeit of five hundred dollars for the faithful performance of this contract. And the said sum of five hundred dollars shall be considered as liquidated damages for the breach of this contract, by either party in favor of the other party. And as security from said first parties to the second party, it is understood and agreed that this bond shall stand for the securing of the same. And the said second party agrees to furnish good and sufficient security for the performance of this contract on his part." While the first clause of this contract recites a present sale, it is manifest from a consideration of all of its terms that this was not the intent or purpose of the parties. The deed was to be executed in the future, and in the meantime it is expressly provided that the contract "shall stand as a bond for a deed." While immediate possession is given to second party of the stubble land, the present possession of the buildings and remaining land was expressly retained by Pringle. Again, it is provided in the contract that the sum of five hundred dollars is fixed as liquidated damages, to be paid by either party upon his failure to perform his part of the agreement. Under the terms of this agreement, if the amount fixed was, as it is termed, liquidated damages, specific performance could not have been compelled by the second party, or so-called vendee. Pomeroy Specific Performance, section 50. Neither title nor ownership can be said to have passed under this contract to Hall. It is a mere agreement for a future sale. Being such, it is not a breach of the condition quoted. *Kempton v. Insurance Co.,* 62 Iowa, 83. Appellant relies upon *Davidson v. Insurance Co.,* 71 Iowa, 532. That case was decided by a divided court. But, aside from this fact, we may say that it does not conflict with the rule announced in the *Kempton Case.* In the *Davidson Case* possession was given the person who contracted to purchase,

and the fact is allowed much force by the court. It is said, "Nothing remains to be done but for the party taking possession to make the payments." And, speaking of the case of *Kempton v. Insurance Co.*, with other cases, it is said: "But those cases all differ from the case at bar. In those cases something yet remained to be done by the vendor in addition to the execution of the deed." In the case we have here, not only did it remain for Pringle to give possession of the insured premises, but no part of the purchase price had been paid at the time of the fire, and the contract contained a provision by which he might avoid his obligation to convey by paying the stipulated damages; for, in the absence of any extrinsic evidence tending to show a different intent, we feel compelled to accept this language of the contract as meaning literally what it says. The five hundred dollars mentioned is denominated liquidated damages, and in this collateral proceeding we think we should so treat it. See, also, on the matter of the sale, *Erb v. Fidelity Ins. Co.*, 99 Iowa, 727; *Erb v. German-American Ins. Co.*, 98 Iowa, 607, and *Lodge v. Insurance Co.*, 91 Iowa, 103, as indicating the strictness with which such conditions are construed against the company. We might well rest our conclusion upon this branch of the controversy on the *Kempton Case* alone, supported as it is in principle by the other decisions of this court to which we have called attention. It is well, however, to say that the doctrine announced is sustained by other courts. *Grabale v. Insurance Co.*, 32 Neb. 645 (49 N. W. Rep. 713); *Insurance Co. v. Kelly*, 32 Md. 421; *Hill v. Protection Co.*, 59 Pa. St. 474; *Browning v. Insurance Co.*, 71 N. Y. 508; *Trumbull v. Insurance Co.*, 12 Ohio, 305; *Insurance Co. v. Brown*, 77 Md. 64 (27 Atl. Rep. 314); *Insurance Co. v. Bethel*, 142 Ill. Sup. 537 (32 N. E. Rep. 510).

II. Another defense is that no proofs of loss were made. The policy in suit does not appear in full in the record. Appellant sets forth only such parts as it deems material. On the branch of the case we are considering, a

clause of the policy which is pertinent appears in the original abstract (page 10) in these words: "In case of loss, the assured shall, within sixty days thereafter, render a particular account of such loss, under oath, stating when and how the loss originated, the nature of the title and interest of the assured and of others in the property, all incumbrances thereon, and the cash value thereof, the amount of loss or damage on each item separately and correctly, how and by whom and for what purpose the building insured or containing the property insured, and the several parts thereof, were occupied at the time of the loss, * * * and shall subscribe to the same." In an amended abstract appellant says: "The abstract in this case does not contain a copy of the policy, but only such portions thereof as are necessary to the decision of the case. The clause in regard to the requirements as to proofs of loss was erroneously copied in the original abstract (page 10), and the same should be read as follows: "Now, therefore, the said company does hereby promise and agree (subject to the stipulations herein and indorsed hereon, which constitute the basis of this insurance), to immediately upon receipt of proper proofs make good unto the assured, their administrators or assigns, all such immediate loss or damage, not exceeding the amount insured, nor the actual cash value of the property at the time of the loss, which loss or damage shall in no case exceed what it would cost to repair or replace the same, nor the interest of the assured in the property, as shall happen by fire or lightning during the term of one year," etc. It appears from this that the policy did not prescribe the character or terms of the proofs of loss, nor fix any time within which they should be given. The statute, however, covers these matters (section 3, chapter 211, Acts Eighteenth General Assembly), and we shall proceed to inquire as to whether its requirements have been fulfilled. After the fire the following communication was sent to the defendant company: "Fairfield, Iowa, October 25th, 1895. Des Moines Insurance Company, Des

Moines, Iowa—Gentlemen: At the request of Mr. W. D. Pringle, we write to notify you of the loss under policy No. 156,064, issued to R. W. and W. D. Pringle. Their dwelling, summer kitchen, and wood house burned yesterday afternoon at 3 o'clock. The fire is supposed to have originated from a spark from the flue of the summer kitchen catching in the roof of the main building. The loss of the building is total. A part of the household goods was saved, but the part lost will more than reach the amount of the insurance. So it may be considered a total loss. Mr. and Mrs. Pringle are old people, and by their loss are thrown out of a house to live in. An early settlement of their loss will be a great kindness to them, and will be greatly appreciated by them and the public generally where they are known. Mr. Pringle was absent from home at the time of the fire, and the women of the house were there alone. Respectfully, yours, Raney & Simmons." In response to this the assured received the following: "Office of Des Moines Insurance Co., Des Moines, Iowa, Oct. 26, 1895. Your notice of loss under policy No. 156,064 has been received, and will receive prompt attention. Yours, very truly, J. S. Clark, Sec'y." The statute to which we have called attention provides, in substance, that it shall be sufficient for the insured to give the company notice in writing of the loss, accompanied by an affidavit stating the facts as to how it occurred, so far as known, and its extent. This notice is to be given within sixty days of the time of the loss. The subject-matter of the letter written by Raney & Simmons fulfilled most of the requirements of the statute, and the response of the company, directed to "R. W. and W. D. Pringle, Fairfield, Iowa," shows that the company accepted it as a communication from the insured. All that is lacking, then, to make it in strict compliance with the statute is the affidavit, and this, plaintiffs charge was waived by a failure to object on this ground. We think this point is ruled in plaintiff's favor by the case of *Green v. Insurance Co.,* 84 Iowa, 135. In the case of *Kirkman v. Insurance Co.,* 90 Iowa, 457, relied

upon by appellant, the policy required an immediate notice of loss from the assured, besides the formal proofs, and it was held that an acknowledgment of receipt of the former would not be held a waiver of the latter. None of the other cases cited in the brief of appellant are in conflict with the holding in the *Green Case*. In *Von Genechtin v. Insurance Co.,* 75 Iowa, 544, the notice of loss was given to the local agents, and there was no attempt to make proofs until after the expiration of the sixty days. In *Brock v. Insurance Co.,* 96 Iowa, 39, .the holding is that under an allegation that proofs of loss were made, proper proofs must be shown, and that a waiver cannot be claimed if not pleaded. No question is made but that the pleadings in the case at bar present the issue of waiver. In *Welch v. Insurance Co.,* 71 Iowa, 337, the claimed proofs recited ownership in another than the insured, and it was held that the pleadings did not present the issue of waiver; and in *Welch v. Insurance Co.,* 77 Iowa, 376, the holding was that there was no waiver, because .within the sixty days the company requested an affidavit from the insured, and the request was not complied with.

III.   Finally, it is asserted by appellant that no waiver can be held to have been made in the manner claimed, because of a provision of the policy which reads: "No condition, stipulation, covenant, or clause herein contained shall be changed, annulled, waived or added to except by writing indorsed hereon or annexed hereto, with the signature of the secretary affixed thereto." But we have already seen that the policy, as we have it in the record, makes no provision as to the form or contents of the proofs of loss. So far as we can tell, anything was sufficient, under the contract, which the proper officer was willing to accept.—AFFIRMED.