Iowa Trust & Savings Bank, Guardian, Appellee; George A. Baum, Administrator, Substituted Appellee, v. J. B. Soppe et al., Appellants.

No. 41649.

. APRIL 4, 1933.

Frantzen, Gilloon & Glenn and H. B. White, for appellants.

Brown, Lacy & Clewell, for appellee.

██ STEVENS, J.—The appellant J. B. Soppe on October 17, 1912, qualified as guardian of John Baum, feeble-minded, by taking the required oath and filing bond in the sum of $1,000 with Henry Soppe, as surety. About two months later, the guardian filed a petition for authority to sell real property. So far as the present controversy is concerned, it involves the proceeds derived from the sale of a single eighty-acre tract. All requirements of the statute having been met, the court at the following January term of the district court of Dubuque county, where the guardianship was pending, authorized the guardian to sell the eighty-acre tract for cash at public sale after publishing notice thereof, as prescribed in the order. Report of sale was filed and duly approved by the court in October of the same year. The land was sold to the father of the ward for $8,000. The consideration was not then paid.

Subsequently, and on April 25, 1914, the consideration still unpaid, the guardian was authorized by order of court to enter into a contract or bond for a deed with the purchaser Frank H. Baum and accept a note for the full amount of the purchase price to bear interest at 5 per cent from March 1, 1914, and to become due in three years. A contract or bond for deed, in accordance with the authority thus granted, was duly entered into and on June 20th of

the same year approved by the court. A note was also executed by the purchaser as ordered. No sale bond was executed by the guardian at any time. Funds in larger amounts coming into the hands of the guardian, an additional bond in the sum of $18,000 with the appellant United States Fidelity & Guaranty Company, as surety, was, in obedience to the order of the court on February 17, 1915, filed and duly approved by the court. At the time of the execution of this bond, the guardian was in possession of the note of Frank H. Baum, the purchaser, for $8,000. The purchaser at once possessed and controlled the eighty-acre tract, paying the interest on the note as it came due.

The facts of this case are more or less complicated and we have experienced considerable difficulty in coming to a clear understanding of them. The representations and reports of the guardian upon which an additional bond was found to be necessary made no reference to the $8,000 note and same, apparently, was not taken into consideration in fixing the penalty of the bond which was less than $18,000. The records, however, clearly disclosed the proceedings, in all respects leading up to the final approval by the court of the contract or bond for a deed. We deem it unnecessary at this point to trace the defalcations of the guardian which occurred from time to time. The precise proposition here presented involves one or more questions apparently never passed upon by this court.

It is the contention of the appellant surety company that it never, as a matter of fact, assumed, or, as a matter of law became liable for the misappropriation by the guardian of the cash proceeds of the sale of the land, which fact is not controverted, but which, as stated, were not received by the guardian until after the bond had been executed.

The provisions of the statute with reference to guardians' bonds at the time the bond in question was executed were as follows:

Section 1177-a, Supplement to the Code 1913:

"When a bond is required by law to be given by or for any public officer, deputy or employee of such ·public officer, or by any person holding a fiduciary office or trust, administrator, executor, guardian, trustee, officer or employee of any public or private corporation or association, when not otherwise specifically provided. [it] shall be conditioned as provided in section eleven hundred eighty-three of the code."

Section 1183, Code of 1897:

"All other civil officers, except as especially otherwise provided, shall give bond with the conditions, in substance, as follows:

"That as_____(naming the office), in_____(city, town, township, county or state of Iowa), he will render a true account of his office and of his doings therein to the proper authority, when required thereby or by law; that he will promptly pay over to the office or person entitled thereto all moneys which may come into his hands by virtue of his office; that he will promptly account for all balances of money remaining in his hands at the termination of his office; that he will exercise all reasonable diligence and care in the preservation and lawful disposal of all money, books, papers, securities, or other property appertaining to his said office, and deliver them to his successor, or to any other person authorized to receive the same; and that he will faithfully and impartially, without fear, favor, fraud or oppression, discharge all duties now or hereafter required of his office by law; and the sureties on such bond shall be liable for all money or public property that may come into the hands of such officer at any time during his possession of such office."

Section 3197, Code of 1897, now section 12577, Code 1931:

"Guardians appointed to take charge of the property of a minor must give bond, with surety to be approved by the court or clerk, in a penalty double the value of the personal estate and of the rents and profits of the real estate of the minor, conditioned for the faithful discharge of their duties as such guardians according to law, and take an oath of the same tenor as the condition of the bond. The court, or a judge thereof, may also require a bond to be given by the guardian of the persons of minors, with like conditions."

Section 1177-a of the 1913 Supplement was changed by the Code of 1924, now section 1061 of the Code of 1931, and is as follows:

"All other bonds required by law, when not otherwise specially provided, shall be conditioned as the bonds of public officers."

It will be observed that the penalty provided for a guardian's bond by section 12577, Code 1931, which, in substance, originated in the Code of 1851, section 1496, is double the value of the

personal property of the ward plus rents and profits from real estate. The conditions of the bond therein required are the faithful discharge of the duties of the office by the guardian, as required by law. The conditions of the bond in controversy are in strict harmony with the provisions of section 1183, Code of 1897. The obvious intention of the surety was to comply with the provisions of this section and of section 1177-a, 1913 Supplement. If properly so construed, the obligation assumed by appellant was to "promptly pay over to the officer or person entitled thereto all moneys [or property] which may come into his hands [the guardian] by virtue of his office" and to "promptly account for all balances of money remaining in his hands at the termination of his office" and to "faithfully and impartially * * * discharge all duties now or hereafter required of his office by law."

But it is insisted by appellant that liability to account for the proceeds of the sale of real estate was not contemplated by the parties at the time the bond was executed. Two prior decisions of this court are relied upon by appellant at this point. The opinion in Madison County v. Johnston, 51 Iowa 152, 50 N.W. 492, 493, one of the cases referred to, was filed in 1879. The other case, Bunce v. Bunce, 65 Iowa 106, 21 N.W. 205, was filed in 1884. At that time as now, the statute provided that "before any such sale or mortgage can be executed the guardian must give security to the satisfaction of the court, the penalty of which shall be at least double the value of the property to be sold or of the money to be raised by the mortgage, conditioned that he will faithfully perform his duty in that respect and account for and apply all moneys received by him under the direction of the court." Revision 1860, section 2556.

This statute is preserved as section 12592 in the Code of 1931. The court in the cases cited held that as guardians were in the first instance required by statute to execute a bond in a penalty double the personal estate and of the rents and profits from real estate only and in consideration of the requirement of the statute that before any real estate should be sold or mortgaged by a guardian an additional or sale bond with the prescribed penalty should be executed that the sureties on the guardian's qualifying bond were not liable for the misappropriation by a guardian of the proceeds of the sale or mortgage of real property thereafter coming into his possession, the thought of the court apparently being that no such liability was

contemplated or intended by the parties at the time of the execution of the guardian's qualifying bond.

It is somewhat plausibly argued by counsel that what is said in these cases is determinative of the question before us. With this contention we do not agree. Sections 1183 of the Code of 1897 and 1177-a of the 1913 Supplement, then in full force, became a part of the bond in controversy. This is true not only as a matter of law but also because in strict harmony therewith, the terms and provisions of the statute are, in effect, in specific terms incorporated therein. Under the terms of the statute and of the bond as well, the guardian was bound to account for all moneys at any time coming into his hands by virtue of his office and remaining at the termination thereof. The funds in controversy did come into the guardian's possession during the life of the bond. The bond involved in Madison County v. Johnston, supra, was given a strict construction. It was, however, observed by the court in that case that "it may be that, if the bond contained conditions not covered by those prescribed by the statute, the defendant would be liable thereon, but as it does not, the instrument cannot be extended to matters not within the contemplation of the law."

It is true that section 1177-a of the 1913 Supplement uses the words "not otherwise specifically provided" and that same are preserved in section 1061 of the Code of 1931. This language, if in any sense in conflict with the interpretation we have given the statute, must yield to the broader and more comprehensive provisions thereof. The intention of the legislature in the enactment of section 1177-a of the Supplement undoubtedly was to enlarge, or more clearly define, the liability of sureties upon guardians and numerous other bonds of an official character. Any other interpretation thereof would destroy the effect of the specific reference therein to administrators, executors, and guardians. Paid surety bonds, if not unknown, were never executed in early days in this state. They are common now and, because premiums are paid therefor, are construed most strongly against the surety. Hileman & Gindt v. Faus, 178 Iowa 644, 158 N. W. 597.

The liability which appellant now seeks to avoid must have been contemplated at the time of the execution of the bond, notwithstanding the intermediate report of the guardian did not include the contract and note as its terms, which harmonize with the statute, specifically so provide.

1248

It is the conclusion of the court that the item in controversy comes clearly within the prescribed penalty of the bond upon which this action is based. This conclusion renders unnecessary any consideration or discussion of the doctrine of conversion of realty into personalty ably argued by counsel, further than to observe that the note executed by the purchaser for the purchase price of the eighty-acre tract was, as stated, in the possession of the guardian at the time the bond in suit was executed. The contract of sale had been approved by the court. Whether this worked a conversion we shall not determine. There is some want of harmony in the decisions in other jurisdictions. The precise question as to when, ordinarily, a conversion is accomplished, when sales of realty are made, under judicial orders or decrees, has not been determined by this court.

We have made an effort to ascertain from the record whether the amount found to be due by the trial court is correct. The difficulties in the way of tracing the funds leave us in some doubt as to the computation that should be made. We cannot from the record say that the amount found by the court to be due is erroneous. Something more than the mere computation of the items is involved. If the error was simply one of computation, it could be readily ascertained and corrected, but, as the question involves other matters of fact, the finding of the court of the amount due has the effect of the verdict of a jury and is, to the same extent, binding upon this court. An extended discussion of the matters involved at this point would avail nothing. We find no reversible error in the record and the judgment is affirmed.—Affirmed.

KINDIG, C. J., and ANDERSON, MITCHELL, and KINTZINGER, JJ., concur.