DONALD M. ROWE et ux., appellees, v. F. L. STUFFLEBEAM, defendant, and NEW AMSTERDAM CASUALTY COMPANY, appellant.

No. 49393.

(Reported in 89 N.W.2d 875)

MAY 6, 1958.

Gilmore, Dull & Keith, of Ottumwa, for appellant.

Burn Bannister, of Ottumwa, for defendant F. L. Stufflebeam.

Jones, White & Johnson, of Ottumwa, for appellees.

GARFIELD, J.—Defendant New Amsterdam Casualty Company, a paid surety on a bond to secure performance of a private construction contract, was granted this appeal under rule 332, Rules of Civil Procedure, from an adverse interlocutory ruling adjudicating law points under rule 105, R. C. P.

The action is in equity by the obligee of the bond, Donald

M. Rowe, and his wife (who may be disregarded), for whom defendant Stufflebeam contracted to construct a residence in Ottumwa for \$31,105.40. Upon substantial completion of the house about June 20, 1955, there were many unpaid claims for labor and material, some in large amounts. The petition against Stufflebeam and the casualty company alleges, in addition to the above matters, default in performance of the contract in failing to pay claims filed as mechanics' liens and claims of certain carpenters and in some other respects, and asks for judgment in the total amount of such defaults and for other equitable relief.

The vital provisions of the bond are:

"Now, THEREFORE, the condition of this obligation is such, That if the Principal shall indemnify the Obligee against any loss or damage directly arising by reason of the failure of the Principal faithfully to perform said contract, then this obligation shall be void; otherwise * * * in full force and effect.

"This Bond is executed and accepted upon the following express conditions precedent:

"1. That the Obligee shall faithfully and punctually perform all the terms and conditions of said contract to be performed by the Obligee.

"2. That if the Principal shall abandon said contract * * * the Surety shall have the right to complete said contract, and thereby become entitled to the payment, * * * of the balance of the contract price, * * *.

"3. That the Obligee shall notify the Surety by registered letter, * * * at its office in Baltimore, Maryland, of any breach of said contract, within a reasonable time after such breach shall have come to the knowledge of the Obligee, * * *."

I. After many voluminous pleadings were filed, plaintiff, apparently with the casualty company's consent, asked the court to adjudicate certain law points under rule 105. The court stated the first of these points was whether plaintiff's failure to give notice to the surety in the manner provided in the bond released it from all liability thereunder even though notice was given in the manner alleged in the petition and admitted in the surety's answer.

From these two pleadings it appears plaintiff gave written notice, about June 18, 1955, of the defaults complained of by letter to the surety's resident agent in Ottumwa who countersigned the bond, rather than by registered letter at the surety's office in Baltimore. Also that about July 1, 1955, plaintiff received a letter from the surety's Chicago branch office stating it would send a representative to Ottumwa to see plaintiff, about July 19 this representative from the Chicago office came to Ottumwa and a conference was held relative to plaintiff's claims, attended by all parties to this action, by plaintiff's attorney and appellant's Ottumwa counsel.

The petition alleges that by reason of the above facts appellant waived strict compliance with provisions of the bond relative to notice by registered mail addressed to its Baltimore office. The trial court so ruled in adjudicating the first law point and that the surety was not released from liability by departure from terms of the bond as to manner of giving notice. It is not here contended the notice was not given within a reasonable time after breach of the contract came to plaintiff's knowledge. We have no doubt this ruling is correct.

We may note that the condition of the bond requiring notice of breach of the contract is one to be performed after occurrence of the loss for which recovery is sought and is not essential to the binding force of the bond prior to any default. Conditions of this class pertain to the remedy and, although precedent to maintenance of an action, are not ordinarily as strictly construed by courts as are conditions involving the essence of the agreement. Van Buren County v. American Surety Co., 137 Iowa 490, 495, 115 N.W. 24, 126 Am. St. Rep. 290, and citations. See also Schoeman v. Loyal Protective Life Ins. Co., 239 Iowa 664, 670, 32 N.W.2d 212, 215.

We may also observe that the rule prevails in many jurisdictions that failure to give a paid surety any notice of the contractor's default in failing to complete the building in the time agreed upon is no defense to an action on the bond based upon default arising from unpaid claims for labor and material. Community Bldg. Co. v. Maryland Casualty Co., 9 Cir., Wash., 8 F.2d 678, 679, and citations; Maryland Casualty Co. v. Fowler,

4 Cir., N. C., 31 F.2d 881, 63 A. L. R. 1375, 1379, 1380. Van Buren County v. American Surety Co.,' supra last above, is frequently cited in support of this rule.

■ It appears here without dispute appellant acquired from plaintiff in proper time all information it was entitled to receive through a registered letter at its Baltimore office and, after some delay on its part, acted thereon. It made no objection to a failure to comply literally with this provision of the bond until after this action was commenced. Under these circumstances it must be held to have waived strict compliance with this requirement of the bond.

Our conclusion finds support in Green v. Des Moines Fire Ins. Co., 84 Iowa 135, 50 N.W. 558; Harris v. Phoenix Ins. Co., 85 Iowa 238, 52 N.W. 128; Pringle v. Des Moines Ins. Co., 107 Iowa 742, 747-9, 77 N.W. 521; Travelers Ins. Co. v. Farmers Mutual Fire Ins. Assn., 211 Iowa 1051, 1061, 1062, 233 N.W. 153; Lee v. Farmers Mutual Hail Ins. Assn., 214 Iowa 932, 933, 241 N.W. 403; Schoeman v. Loyal Protective Life Ins. Co., supra, 239 Iowa 664, 668-71, 32 N.W.2d 212, 214-16; Johnson v. Laurence, 171 Minn. 202, 214 N.W. 24 (closely in point).

That the cases just cited growing out of insurance contracts are in point upon the proposition now considered see Van Buren County v. American Surety Co., supra, 137 Iowa 490, 495, 115 N.W. 24, 126 Am. St. Rep. 290, and citations; Annotations, 127 A. L. R. 10, 11; 12 A. L. R. 382.

Another reason which supports the trial court's adjudication of the first law point is that appellant was not prejudiced by plaintiff's departure from the strict terms of the bond in the manner of notifying it of breach of the building contract. See authorities cited in the next division hereof.

II. The remaining law points present related questions and may be considered together. The trial court stated the second point to be, in substance, whether the fact plaintiff paid the contractor a substantial portion of the contract price, without the surety's consent, by the transfer of other real estate to him constitutes such a departure from the provision of the contract for payment "in current funds" as to release the surety from liability under the bond without any proof of prejudice to it by reason of such manner of payment.

The third law point was stated to be whether the fact plaintiff made premature payment in a substantial amount on the construction contract, without the surety's consent, constitutes such a departure from the contract as to release the surety without any proof of prejudice to it by reason thereof.

The remaining law question was whether if no one of the three matters heretofore referred to releases the surety a combination of two or more of them has that effect.

■ ■ As the statement of the second law point indicates, the construction contract provides for payment "in current funds" of $31,105.40. In fact $23,000 of this sum was paid by the transfer to the contractor of plaintiff's former residence in Ottumwa. There can be no doubt this last amount was not paid "in current funds." The construction contract also provides for monthly payments as the work progresses of 90% of the value of labor and materials incorporated in the work and of materials stored at the site, as estimated by the architect, less the aggregate of previous payments.

The trial court ruled that failure to pay the contractor in current funds or making payments to him prematurely would not discharge the surety from liability on the bond unless prejudice to it is shown on account thereof. We affirm this adjudication.

The annotation in 127 A. L. R. 10, 62, cites many decisions in support of the statement: "There is at the present day almost no dissent from the view that a departure from the terms of a construction contract with respect to payments will not have the effect of discharging a compensated surety on the contractor's bond, unless it appears that such departure has resulted in injury, loss, or prejudice to the surety."

The same annotation at page 69 also cites many precedents for the statement that as to "deviations from the provisions of the contract with respect to the time, manner, amount, or conditions of payments made to the contractor * * * the great weight of authority supports the view that such an unauthorized payment has the effect of releasing a compensated surety only pro tanto, to the extent of the injury or prejudice suffered by the surety, and not necessarily to the full extent of the surety's obligation."

Restatement, Security, section 128, drawing a distinction between a gratuitous surety and a compensated one, states the latter is discharged only if a modification of the contract, without the surety's consent, materially increases its risk and is not discharged if its risk is not materially increased, but its obligation is reduced to the extent of loss due to the modification. See also Comment f, Illustrations 8 and 9, under this section.

72 C. J. S., Principal and Surety, section 124c, page 605, says: " * * * it is generally held that in order for a compensated or corporate surety to be discharged by * * * departure from the contract or obligation it must have been prejudiced thereby." Idem, section 133b, page 625, states: "In conformity with the view * * * that the surety will not be discharged by * * * departures from, provisions of the contract unless the surety is injured thereby, it is held that the surety will not be discharged by premature payments to the contractor, where the money paid has been entirely applied to payment of claims for labor and materials for which the surety is liable under the bond."

See also 9 Am. Jur., Building and Construction Contracts, pages 24, 25 of 1957 Cumulative Supplement.

Referring to the effect of excess payments to the contractor, Stearns Law of Suretyship, Fifth Ed., section 6.8, pages 123, 124, says: "More recent cases seem less disposed to discharge the surety under such circumstances. Some courts have held that the surety is discharged merely to the extent that he has been prejudiced by the change in the manner of payment."

We have carefully reviewed our own decisions that bear on the point now considered. Except for Lamson v. Maryland Casualty Co., 196 Iowa 1185, 194 N.W. 70, the precedents on which appellant most relies all involve personal, gratuitous sureties who are favorites of the law. They are Independent District of Mason City v. Reichard, 50 Iowa 98; Stillman v. Wickham, 106 Iowa 597, 76 N.W. 1008; McConnell v. Poor, 113 Iowa 133, 84 N.W. 968, 52 L. R. A. 312; Queal & Co. v. Stradley, 117 Iowa 748, 90 N.W. 588; Holland v. Story County, 195 Iowa 489, 192 N.W. 402.

■ We do not regard the Lamson case as factually in point upon the present appeal. The others are governed by quite different considerations from those that are now almost universally held to apply to a paid surety engaged in that business for profit. The undertaking of such a surety is in the nature of an insurance contract and is controlled by rules applicable to the latter class of contracts rather than by rules applied to an accommodation surety. Van Buren County v. American Surety Co., supra, 137 Iowa 490, 495, 115 N.W. 24, 126 Am. St. Rep. 290, and citations; Hileman & Gindt v. Faus, 178 Iowa 644, 650, 651, 659, 158 N.W. 597; Chapman v. Hoage, 296 U. S. 526, 531, 56 S. Ct. 333, 80 L.Ed. 370, 373; Pickens County v. National Surety Co. (Parker, J.), 4 Cir., S. C., 13 F.2d 758, 762; Annotations, 12 A. L. R. 382; 94 A. L. R. 876; 127 A. L. R. 10, 11; 72 C. J. S., Principal and Surety, section 124c, pages 604, 605. See also Iowa Trust & Savings Bank v. Soppe, 215 Iowa 1242, 1247, 247 N.W. 632; Restatement, Restitution, section 128.

The conclusion that part payment to the contractor in another manner than in current funds or prematurely does not release appellant unless it was prejudiced thereby finds support in Hileman & Gindt v. Faus, supra, 178 Iowa 644, 658, 158 N.W. 597, and Humboldt County v. Ward Brothers, 163 Iowa 510, 520–22, 145 N.W. 49. See also In re Estate of Tabasinsky, 228 Iowa 1102, 1114, 293 N.W. 578, holding that an extension of time of payment by the obligee to the principal debtor does not discharge a paid surety unless prejudice is shown. Murray City v. Banks, 62 Utah 296, 219 P. 246, is to like effect. See also United States F. & G. Co. v. United States, 191 U. S. 416, 426, 24 S. Ct. 142, 48 L.Ed. 242, 246, 247.

Among precedents from other jurisdictions that support our decision here are: United States v. Duby, 9 Cir., Wash., 201 F.2d 800; Pickens County v. National Surety Co., supra, 4 Cir., S. C., 13 F.2d 758, 762; Gibbs v. Hartford Accident & Indemnity Co., Fla., 62 So.2d 599; Y. M. C. A. v. United States F. & G. Co., 90 Kan. 332, 133 P. 894, L. R. A. 1915C 170, modified on rehearing in 92 Kan. 467, 140 P. 892, L. R. A. 1915C 177; Fitger Brewing Co. v. American Bonding Co., 127 Minn. 330, 149 N.W. 539; Maryland Casualty Co. v. Eagle River

U. F. H. Sch. Dist., 188 Wis. 520, 205 N.W. 926. See also Graybar Elec. Co. v. Manufacturers Cas. Co., 21 N. J. 517, 122 A.2d 624, 627.

United States F. & G. Co. v. Citizens B. & I. Co., 62 Colo. 440, 163 P. 281, upon which appellant relies, is not in point upon its facts, as the present case has come to us. There the owner-obligee failed to comply with provisions of the building contract by making premature and excessive payments to the contractor. Of the amount so paid, $5100 was applied on the contractor's indebtedness to a bank controlled by the same directors as those who controlled the obligee-corporation and the money was not used to pay for labor or material furnished in performing the contract. It seems clear the surety there was prejudiced by the obligee's departure from terms of the contract.

Appellant calls attention to this statement from Bourrett v. W. M. Bride Construction Co., Inc., 248 Iowa 1080, 1084, 84 N.W.2d 4, 6: "The liability of a surety is to be determined by the specified conditions of the bond and cannot be enlarged beyond them." The cited case has little if any application here. It holds merely that where a building bond runs only to a named owner and undertakes no more than to indemnify him against breaches of the contract no one else may recover on the bond, especially where it contains an express provision limiting its benefits or right of action thereon to the owner and he has sustained no loss, in the legal sense, by the contractor's breach of the contract. The quoted statement is made in connection with this holding, not in connection with consideration of such issues as are now before us.

Appellant suggests that if we hold, as we do, it is not released from liability on the bond unless it has been prejudiced by plaintiff's departure from terms of the contract in the respects claimed, such prejudice is shown by admitted allegations of the pleadings. We cannot accept this suggestion. No such contention seems to have been made in the district court and, upon elementary principles, it should not be permitted for the first time here.

Apparently appellant did not object to the court's statement of law points to be adjudicated. None of them includes the question whether prejudice to appellant appears from the

pleadings. Nor was such question adjudicated. Further, the suggestion just mentioned is not related to any assigned error upon which a reversal is asked. It appears the issue whether appellant has been prejudiced can be determined only upon trial of the case.

It seems clear that if, as we hold, the first three law points were correctly adjudicated there was no error in the ruling on the fourth point heretofore stated. If appellant was not released, in the absence of prejudice to it, by any one of the first three matters relied upon, no combination of them would have that effect.

The trial court evidently was not asked to—nor did he—adjudicate the question whether, in the event appellant is shown to have been prejudiced by plaintiff's departure from terms of the building contract, it would be released from all liability on the bond or merely to the extent it has been damaged by such departure. Nor has this question been argued or submitted to us. Although some of the authorities herein referred to bear on the extent of relief appellant would be entitled to (i.e., whether it should be released in toto or only pro tanto) if prejudice to it should appear, we feel the question is not properly before us. We therefore decline to decide it.—Affirmed.

All JUSTICES concur except SMITH, J., not sitting.