WESTINGHOUSE ELECTRIC CORPORATION, appellee, v. MILL & ELEVATOR COMPANY et al., appellants.

## No. 50724.

(Reported in 118 N.W.2d 528)

DECEMBER 11, 1962.

REHEARING DENIED FEBRUARY 12, 1963.

Garten, Lindel & Garten, of Des Moines, and Westfall, Laird & Burington, of Mason City, for appellants.

Neiman, Neiman & Stone, of Des Moines, for appellee.

GARFIELD, C. J.—The question presented is the liability of defendant surety on a construction bond to plaintiff-subcontractor from which defendant principal contractor purchased material in performing the contract. The answer depends on the proper construction of the contractor's bond and the contract made part thereof. Following trial in equity, mainly on stipulated facts, judgment was entered for plaintiff against defendants' contractor and its surety. These defendants and the owner appeal.

Plaintiff-subcontractor is Westinghouse Electric Corporation. Defendant principal contractor is Mill & Elevator Company. Surety on the contractor's bond is Farmers Elevator Mutual Insurance Company. Farmers Cooperative Elevator is owner. Various mechanic's lien claimants were also made defendants.

The owner made a written contract with the (principal) contractor under which the latter agreed to build in the town of Stanhope a feed mill and install necessary machinery, equipment and wiring therein. Total contract price was $177,475. The contract contains these pertinent provisions:

"6. The Contractor agrees to purchase all materials and machinery, furnish all necessary labor and carry on the project in a workmanlike manner. * * *

"8. It is understood that the Contractor will subcontract portions of this project, and that these subcontracts are a part of this total contract. * * *

"11. The Contractor agrees to * * * obtain a performance bond * * *."

The owner was to and did pay the cost of the bond in addition to the contract price.

Attached to and forming part of the contract is a list of the machinery the contractor was to furnish.

The bond, headed "Contract Bond", describes the contract and goes on to provide: "* * * which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein. Now, therefore, the condition of the above obligation is such, That if the above bounden Principal

shall well and truly keep, do and perform, each and every, all and singular, the matters and things in said contract set forth and specified to be by the said Principal kept, done and performed at the time and in the manner in said contract specified, and shall pay over, make good and reimburse to the above named Obligee, all loss and damage which said Obligee may sustain by reason of failure or default on the part of said Principal, then this obligation shall be void; otherwise, to be and remain in full force and effect."

The contractor defaulted in construction of the improvement and advised the surety it could go no further, was in effect insolvent, and no money was then due the contractor from the owner. The surety took over the assets of the contractor, "started running the job * * * and the contract was completed by the contractor with the exception of some minor" items. The surety paid holders of mechanic's liens filed within 60 days after the last material or labor was furnished. Claims not so filed, including plaintiff's, were not paid. Our question is whether the bond obligates the surety to pay them.

It was admitted at the trial the materials for which payment was claimed were sold and delivered to the contractor and used in the improvement for the owner. The amounts were also admitted. Plaintiff's claim for $13,606.16 is much the largest. It was also established that the contractor made and delivered purchase orders to the suppliers before they delivered material to the contractor. It is agreed the contractor was obligated to pay the subcontractors for the materials so purchased and delivered.

I. It is now almost universally held that the undertaking of a paid surety engaged in that business for profit is in the nature of an insurance contract and is controlled by rules applicable thereto rather than by rules applied to a gratuitous surety who was a favorite of the law. Rowe v. Stufflebeam, 249 Iowa 985, 992, 89 N.W.2d 875, 878, 879, and citations; 9 Am. Jur., Building and Construction Contracts, section 89; 72 C. J. S., Principal and Surety, section 102.

"* * * in determining the right of a laborer or materialman to the benefit of a contractor's bond, as against a compen-

sated surety, the undertaking will be most strongly construed in favor of such persons and against the surety. That is to say, where the bond is reasonably susceptible of two constructions, that one which is the more favorable to the claimant will be adopted." Annotation, 77 A. L. R. 21, 42, 43, citing numerous precedents; supplemented in 118 A. L. R. 57, 62. To like effect are Clinton Bridge Works v. Kingsley, 188 Iowa 218, 224, 175 N.W. 976; Streator Clay Mfg. Co. v. Henning-Vineyard Co., 176 Iowa 297, 311, 155 N.W. 1001.

II. There is little if any dispute as to the law governing cases of this kind. The disagreement here is in the application of the law to the bond and contract before us.

It is clear the contract is part of the bond. As stated, the bond expressly so provides. Thus there can be no doubt terms of the contract as well as the bond should be considered in determining the surety's liability under the bond. Bourrett v. W. M. Bride Constr. Co., 248 Iowa 1080, 1085, 84 N.W.2d 4, 7; Annotations, 77 A. L. R. 21, 46, 47; 118 A. L. R. 57, 62.

The fact only the owner is named as obligee of the bond is unimportant. "Although there are a few outside decisions to the contrary it is well settled in Iowa and is the weight of authority generally that laborers and materialmen may recover on a contractor's bond conditioned that the contractor shall pay all claims for labor and material, or shall faithfully perform a contract providing for such payment, although the owner alone is named as obligee of the bond." (Citations) Bourrett case, supra.

In the precedent last cited the main condition of the bond was to " 'indemnify the Obligee against any loss or damage * * * by reason of the failure of the Principal to faithfully perform said contract * * *.' " It was not contended the obligee-owner sustained any loss or damage in a legal sense. That the bond was intended only to indemnify the owner was made doubly clear by the express condition in it " 'That no right of action shall accrue upon or by reason hereof, to or for the use or benefit of anyone other than the Obligee herein named; * * *.' " (Page 1086 of 248 Iowa, pages 7 and 8 of 84 N.W.2d)

Bourrett, a subcontractor, was held not entitled to recover on the bond then before us. (For an explanation of the decision

see Rowe v. Stufflebeam, supra, 249 Iowa 985, 993, 89 N.W.2d 875, 879.) However, the Bourrett opinion cites several Iowa decisions where laborers or materialmen have been allowed to recover on a contractor's bond conditioned, in substance, that he will pay all claims for labor and material *or faithfully perform a contract providing for such payment* (page 1088 of 248 Iowa, pages 8, 9 of 84 N.W.2d).

In Haakinson & Beaty Co. v. McPherson, 182 Iowa 476, 166 N.W. 60, the contract provided payment should be made as set forth in the specifications which, together with the plans, were made part of the contract. The specifications required the contractor to furnish a bond to protect the county and any subcontractor and to provide a list of all persons furnishing labor or materials " 'with evidence that such persons have been paid in full.' " We held the contract required the contractor to pay the subcontractor in full and he could recover on the bond. The opinion thus states the law we think is applicable here (pages 478, 480 of 182 Iowa) :

"But it is not necessary that either contract, bond or both show on their face that they are or cover an agreement to perform some act for the benefit of a third person, and that breach thereof is guaranteed against. If the two papers, or others related and involved, fairly construed together, show an obligation on part of the contractor to pay the subcontractor for material put into the contract work, and the bond is an undertaking to make good any loss suffered for any breach of the contract, the subcontractor may sue and recover on the bond. [Citations] The decision must turn upon the construction of the contract [citation]. So the sole question for us is whether * * * the parties named in the contract did make provisions that the contractor should pay materialmen. If there is such a provision, then the contract is available to this plaintiff, who furnished materials as a subcontractor, and he may sue and recover on this bond in his own name. * * * In fewer words, when a contract recites that specifications are a part and basis thereof, and those specifications provide that a bond given shall protect the county and any subcontractor, further provides for monthly proximate payments, and that the county can require the contractor to fur-

nish a list of all persons furnishing labor or materials, 'with evidence that such persons have been paid in full,' there is a contract that the contractor shall pay the subcontractor in full."

The Haakinson decision is followed in Clinton Bridge Works v. Kingsley, supra, 188 Iowa 218, 224, 225, 175 N.W. 976, on similar facts. There the bond referred to and made the contract a part thereof and provided the principal contractor shall in all respects fulfill it. The contract in turn made the plans, specifications and instructions to bidders part thereof. We held that reading all these papers together, as they should be, the contractor agreed to pay for labor and material, failed to do so, and the surety was liable to a materialman. Also, as before indicated, that if the question was in doubt and the writings were reasonably susceptible of two constructions, the one less favorable to the surety would be adopted (page 224 of 188 Iowa).

Other Iowa cases hold a subcontractor may recover on a bond given to secure faithful performance of a contract which provides the contractor will pay all claims for labor and material. Jordan v. Kavanaugh, 63 Iowa 152, 18 N.W. 851; Baker & Co. v. Bryan, 64 Iowa 561, 21 N.W. 83; Wells v. Kavanaugh, 70 Iowa 519, 30 N.W. 871; Hipwell v. National Surety Co., 130 Iowa 656, 662, 663, 105 N.W. 318; Streator Clay Mfg. Co. v. Henning-Vineyard Co., supra, 176 Iowa 297, 155 N.W. 1001. In the Baker & Co. case, supra, the bond as well as the contract required payment of all claims for labor and material and production of proper receipts therefor.

It is generally held laborers and materialmen "are entitled to avail themselves of a bond conditioned merely for the faithful performance of the contract, and containing no express and direct provision for their payment, where the contract expressly requires the contractor to pay such persons or to satisfy all claims for labor and materials [citations]." Annotation, 77 A. L. R. 21, 62. To like effect is annotation, 118 A. L. R. 57, 74.

It remains to apply the law to the terms of this bond and contract. The bond is conditioned that the "Principal shall well and truly keep, do and perform, each and every, all and singular, the matters and things in said contract set forth and specified * * *." The contract provides, "6. The Contractor agrees to pur-

chase all materials and machinery, furnish all necessary labor * * *." Also, "8. It is understood that the Contractor will subcontract portions of this project, *and that these subcontracts are a part of this total contract.*" (Emphasis added.) It is agreed the contractor was obligated to pay the subcontractors for the material and labor furnished for this project.

The contract and bond, taken together and construed most strongly against the surety, are reasonably susceptible of the construction that the contractor's obligation to pay the subcontractors is made a part of the contract and the bond guarantees performance of the obligation. Since the contractor did not perform the surety is liable.

In their opening brief appellants suggest paragraph 8 of the contract was inserted therein merely to make clear the contractor had the right to "subcontract portions of this project," so the owner could not claim it was a breach of the contract to do so. If the paragraph provided only "It is understood that the Contractor will subcontract portions of this project" the suggestion might be accepted. But the paragraph goes on to say (It is understood * * *) "that these subcontracts are a part of this total contract."

If the above suggestion were accepted as the meaning of paragraph 8 of the contract, the language thereof last quoted is given no effect whatever. The meaning of the paragraph should be gathered from all the language used therein, giving effect to it all. Chicago & N. W. Ry. Co. v. Kramme, 244 Iowa 944, 947, 948, 59 N.W.2d 204, 206, and citations. The construction we give the paragraph gives effect to both clauses therein.

In their reply brief appellants say the second part of paragraph 8 was inserted solely for the purpose of not exonerating the contractor from his obligation to furnish the materials set out in the specifications and to perform the work in a workmanlike manner by reason of the authorization to subcontract portions of the project.

What the parties intended paragraph 8 to mean must be determined mainly from the language used. There is no extrinsic evidence on the point. We think the construction we give the paragraph is reasonable. The surety is not entitled to the most

favorable construction that could be given the contract if another reasonable construction, less favorable to it, may be adopted.

Plaintiff argues it is entitled to recover on the bond regardless of paragraph 8 of the contract and the fact the contractor was obligated under the subcontracts to pay those supplying material for the project. The argument is that the provision of paragraph 6 of the contract, "The Contractor agrees to *purchase* all materials and machinery" (emphasis added) is the equivalent of an agreement to obtain by paying money or its equivalent, to buy for a price. Many authorities are cited in support of the argument. The conclusion reached as to the meaning of the contract, including paragraph 8, makes it unnecessary to decide the effect of the contract if paragraph 8 were omitted.— Affirmed.

All JUSTICES concur except STUART, J., who takes no part.